**Lazar LOWINGER, et al.,**
**Plaintiffs–Appellees,**

v.

**William T. BRODERICK,**
**Defendant–Appellant.**

**No. 94–2077.**

United States Court of Appeals,
First Circuit.

Heard Feb. 10, 1995.

Decided March 22, 1995.

---

2. *Commonwealth v. Gould,* 380 Mass. 672, 680–86, 405 N.E.2d 927 (1980).

James F. Lamond, with whom Alan J. McDonald and McDonald and Associates, Newton, MA, were on brief, for appellant William T. Broderick.

Thomas J. Chirokas, Lexington, MA, for appellees Lazar Lowinger and Audrey Lowinger.

Before SELYA and BOUDIN, Circuit Judges, and CARTER,* District Judge.

CARTER, District Judge.

In this case Plaintiffs, Lazar and Audrey Lowinger, seek recovery under 42 United States Code Section 1983 and state tort law [1] from Defendants, Sergeant William T. Bro-

---

* Of the District of Maine, sitting by designation.

1. The state law counts in the Complaint include false imprisonment, malicious prosecution, inter-ference with contractual relations, intentional infliction of emotional distress, negligence, and loss of consortium.

derick ("Broderick") and Commissioner Francis M. Roache, both of the Boston Police Department; former Boston Mayor Raymond Flynn; and the City of Boston for damages caused by Defendants' allegedly false arrest of Lazar Lowinger. Defendant Broderick, who was sued in his individual and official capacities, moved for summary judgment asserting his entitlement to qualified immunity for any of the acts alleged by Plaintiffs. The district court concluded that the record contained genuine issues of material fact regarding whether Broderick was entitled to summary judgment and denied Broderick's motion. We now reverse. The essential facts, as presented to the district court by the parties, follow.

## I. FACTS AND PROCEDURAL HISTORY

On September 9, 1987, Defendant Broderick, a sergeant with the Boston Police Department, was assigned to a police district located in Brighton as a patrol supervisor. Shortly after midnight, Broderick responded to a complaint of a loud party and arrested one person, Stephen Quinn, for disturbing the peace and possession of a false liquor purchase identification card. Quinn was taken back to the district station where he was booked and detained.

At approximately the same time as Quinn's arrest, Plaintiff Lazar Lowinger ("Lowinger"), an attorney, was contacted at his home by an individual requesting that Lowinger undertake to represent Quinn. Lowinger contacted the district station and spoke to Broderick, who refused to provide any information regarding Quinn's arrest over the phone. Lowinger went to the police station and entered with two young men, both of whom had been in the station earlier that night in connection with Quinn's arrest and had been told to leave because they were intoxicated, and one of whom had contacted Lowinger to represent Quinn.

Lowinger presented himself at the counter in the station as Quinn's attorney and showed the officer a small hand-held tape recorder, stating that he wanted to see Quinn and intended to record the "proceedings." At that time, Broderick instructed the two men accompanying Lowinger to leave the station and expressly told Lowinger that he did not authorize the recording of the conversation and to turn the recorder off. The two men left and Lowinger turned off the recorder, placed it on the counter, and proceeded to have a "heated discussion" with Broderick regarding the use of the recorder during which Broderick informed Lowinger that the recording of a conversation without the knowledge or authorization of the participants was a felony.[2] The upshot of the discussion was that Lowinger was unsuccessful in convincing Broderick to permit him to see Quinn.

At some point thereafter, Broderick saw the recorder in Lowinger's possession once again with its red light on and the tape moving inside. It is disputed whether Broderick was speaking at the time the machine was recording. Broderick instructed the other officers to take Lowinger into custody for violation of Massachusetts state law against unauthorized interception of communications. In the criminal prosecution that followed, Lowinger successfully moved to suppress the small tape recorder after the state court concluded that, because there were only a "few words" on the tape from that incident, Lowinger was merely dictating a memo to himself when he turned on the recorder.

Lowinger and his wife, Audrey, commenced this civil action for Defendants' alleged infringement on the Lowingers' civil rights and for violations of state tort law. Broderick moved for summary judgment on the basis of qualified immunity and submitted an affidavit to support his position. Plaintiffs filed an untimely response to the

**2.** Broderick was making reference to a Massachusetts criminal statute which imposes penalties upon any person who: "willfully commits an interception [or] attempts to commit an interception ... of any wire or oral communication." Mass.Gen.Laws.Ann. ch. 272, § 99(C)(1). As provided in that section's definitions, " 'intercep-

tion' means to secretly hear [or] secretly record ... the contents of any wire or oral communication through the use of any interception device by any person other than a person given prior authority by all parties to such communication." *Id.* § 99(B)(4).

motion and submitted a copy of the "Findings Regarding Allowance of Defendant's Motion to Suppress" ("Findings") issued by the Massachusetts District Court during the unsuccessful criminal prosecution of Lowinger.[3] When the summary judgment motion was decided in recorded proceedings before the district court, the court considered both Broderick's affidavit and the state court's Findings, concluding that a genuine issue of material fact existed regarding whether Broderick was entitled to qualified immunity. This interlocutory appeal by Broderick followed.

## II. ANALYSIS

### A. Jurisdiction

As a preliminary matter, Lowinger disputes whether this Court has proper jurisdiction over the appeal since the district court's denial of summary judgment was not a "final order" from which an appeal may follow.

■ It is well-settled that a court of appeals has jurisdiction over an interlocutory appeal from a district court's denial of qualified immunity. *Mitchell v. Forsyth*, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). The Supreme Court in *Mitchell* explained that immunity, whether absolute or qualified, has the "essential attribute" of entitling its possessor to avoid standing trial. Thus, the doctrine provides *"immunity from suit* rather than a mere defense to liability; and . . . it is effectively lost if a case is erroneously permitted to go to trial." *Id.* at 526, 105 S.Ct. at 2815. *See also Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).

■ This Court, time and again, has heeded the Supreme Court's instructions in this area and exercised jurisdiction over such appeals, including appeals from district courts that had concluded that there were genuine issues of material fact, and, on several occasions, this Court has reversed the denial of summary judgment. *See, e.g., Febus–Rodríguez v. Betancourt–Lebrón*, 14 F.3d 87, 90 (1st Cir.1994); *Rogers v. Fair*, 902 F.2d 140, 142 (1st Cir.1990); *Fonte v. Collins*, 898 F.2d 284, 285 (1st Cir.1990); *Newman v. Massachusetts*, 884 F.2d 19, 22 (1st Cir.1989); *Mariani–Girón v. Acevedo–Ruiz*, 877 F.2d 1114, 1120 (1st Cir.1988); *Unwin v. Campbell*, 863 F.2d 124, 132 (1st Cir.1989). If the district court was in error in denying summary judgment, permitting the immediate appeal of such denials avoids subjecting officials unnecessarily to discovery and trial. Accordingly, our review of the district court's actions here is proper and, since those actions address questions of law, the district court's conclusions are subject to plenary review. *Febus–Rodríguez*, 14 F.3d at 90.

### B. Summary Judgment and Qualified Immunity

The central question presented by this appeal is whether the district court properly concluded that the record demonstrated genuine issues of material fact regarding Broderick's entitlement to immunity and, therefore, that Broderick was not entitled to summary judgment as a matter of law. Broderick argues on appeal that the record in this case substantiates his entitlement to qualified immunity and that the district court erred when it concluded that genuine issues of material fact were generated through the parties' submissions on the motion. Although Broderick has raised other issues in this appeal, our resolution of this primary matter eliminates our need to reach these other issues.[4]

---

**3.** The Commonwealth of Massachusetts sought review of the District Court's Order suppressing the recorder but later withdrew its appeal. Appendix at 63–65.

**4.** Broderick raises certain procedural issues in his appeal, which we do not reach today. Specifically, Broderick argues that since the Lowingers' opposition to his Motion for Summary Judgment was untimely under local rules, it should have been disregarded by the district court. Further, Broderick argues that the district court

erred by relying on the state court's Findings in lieu of affidavits or other submissions from the Lowingers. This Court's primary analysis of the denial of summary judgment here has assumed that the District Court properly considered Plaintiffs' response and the Findings in opposition to the motion for summary judgment. Since, even with those assumptions, we conclude that Broderick was entitled to summary judgment, we need not decide whether the district court should have disregarded either Plaintiffs' response or the Findings of the state court.

■ The inquiry for a district court's resolution on a motion for summary judgment brought by an official seeking qualified immunity is "whether a reasonable official could have believed his actions were lawful in light of clearly established law and the information the official possessed at the time of his allegedly unlawful conduct." *Id.* at 91 (quoting *McBride v. Taylor,* 924 F.2d 386, 389 (1st Cir.1991)). Although, as with any summary judgment determination, all facts and reasonable inferences are construed in favor of the nonmoving party, the analysis employed to determine whether an official is entitled to summary judgment is quite generous. A "reasonable, although mistaken, conclusion about the lawfulness of one's conduct does not subject a government official to personal liability." *Cookish v. Powell,* 945 F.2d 441, 443 (1st Cir.1991). This Court has observed that the "qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Rivera v. Murphy,* 979 F.2d 259, 263 (1st Cir.1992) (quoting *Hunter v. Bryant,* 502 U.S. 224, 229, 112 S.Ct. 534, 537, 116 L.Ed.2d 589, 596 (1991) (per curiam)). Under this analysis, "A court must look to the 'objective legal reasonableness' of an official's conduct, as measured by reference to clearly established law." *Mariani–Girón,* 877 F.2d at 1116. Therefore, since even erroneous decisions by officials may be entitled to qualified immunity, the analysis employed to determine entitlement to qualified immunity warrants an entirely different approach from that employed to evaluate the merits of Plaintiffs' underlying claims. *Id.; Morales v. Ramírez,* 906 F.2d 784, 787 (1st Cir.1990).

■ Although the district court here correctly observed at the outset that Broderick was entitled to summary judgment "if a reasonable police officer could have believed he had probable cause to arrest the plaintiff," it is clear from the court's subsequent remarks that its true focus was the merits of Plaintiffs' underlying case when it determined whether a genuine issue of material fact existed on this record. Appendix at 776. Without reaching the issue of whether the state court Findings constituted a proper form of supporting documentation for consideration on a summary judgment motion,[5] this Court concludes that the district court was in error when it relied upon certain conclusions of the state court to determine the existence of a genuine issue of material fact regarding Broderick's entitlement to summary judgment.

The portion of Broderick's affidavit pertinent to this motion states:

> I then attempted to answer Attorney Lowinger's questions regarding the person he identified as his client. Within a short time after I started doing so, I observed that Attorney Lowinger had the tape recorder cupped within his hands. Despite this, I observed a red light illuminated on the recorder, and that the tape was turning in the recorder.

App. at 40. It is beyond dispute that this statement by Broderick, standing alone, establishes a reasonable belief on his part that he was being secretly recorded without his permission in violation of a state criminal statute.[6] The state court Findings considered by the district court to generate a factual dispute on this motion were: "Lowinger then stepped back turned on the recorder to dictate a memo to himself regarding the refusal to allow him to see Quinn," and "By stipulation the tape recorder contained, relative to this whole incident, on tape a very few words indicating that the two young men with Lowinger leave the building." App. at 61, Findings Nos. 9 and 12.

■ These Findings, however, do nothing to refute the *observations* by Broderick in the above-quoted portion of his affidavit. Instead, the Findings address the merits of Lowinger's criminal case and, thus, do not

---

5. See *supra* note 4.

6. Upon its review of Broderick's affidavit, the district court observed, "If these facts were undisputed, it appears the defendant would be entitled to summary judgment because on those facts, a police officer could reasonably believe that there was probable cause that the plaintiff was secretly tape-recording a conversation with the defendant." App. at 78. Although our review of such conclusions of law is plenary, we see no reason to reach a different result, nor have Plaintiffs provided any.

**66**

create a genuine issue of material fact germane to the summary judgment analysis for qualified immunity here. While subsequent investigation and adversarial fact-finding hearings may have established that, *in fact,* Lowinger was *not* secretly taping his conversation with Broderick, such a conclusion does not contradict the assertion by Broderick that, based upon his observations at the time, he *thought* that Lowinger was making such a recording.[7] Similarly, the discovery that the tape did not contain a recording of that conversation does not negate what Broderick had previously reasonably concluded based upon all of the circumstances, but merely supports Lowinger's position before the Massachusetts District Court that he was not guilty of intercepting communications.

The district court attached great significance to its conclusion that a genuine dispute exists as to whether Broderick was speaking at the time of the recording. Broderick's affidavit suggests that he was speaking, but the district court drew the inference that he was not, based upon the Finding submitted by Plaintiffs that only a "very few words" were on the recording. The basis for such an inference is not plainly apparent to this Court.[8] More importantly, however, whether Broderick was speaking at the precise moment he *noticed* the recorder in operation is not determinative of whether he had the reasonable belief that Lowinger was taping their conversation. Plaintiffs did not produce any evidence to directly refute Broderick's affidavit on this point. There is no indication, for example, that Broderick knew how long the recorder was on or that he

knew *at that time* that none of his words had been *or would be* recorded—he only perceived that the recorder was in close proximity and that it was recording. That perception, which was unchallenged in the proceedings below, establishes a reasonable belief on Broderick's part that Lowinger was attempting to secretly tape their conversation without Broderick's authorization in violation of Massachusetts law.

Lowinger also argues that the contents of the tape are relevant to this motion since they "present[ ] a challenge to Broderick's credibility." Brief of Appellee at 23. As noted already, the tape's contents do nothing to challenge Broderick's current position regarding his perceptions and beliefs at the time the recording was made.[9] At most, such evidence demonstrates that Broderick may have been *mistaken* in such perceptions and beliefs but, as explained above, such errors are irrelevant to the preliminary determination of entitlement to qualified immunity. In short, while the parties' submissions are conflicting with respect to certain facts, they do not create a dispute regarding Broderick's reasonable beliefs. Accordingly, since there is no genuine issue as to any *material* fact, judgment should be entered in favor of Defendant William T. Broderick on the basis of his qualified immunity from judgment.

*Reversed and remanded with directions to enter summary judgment for Defendant Broderick on the claim made under 42 United States Code Section 1983 and to dismiss*

---

7. Thus, this case does not present the scenario of the "rare case" described in *Prokey v. Watkins,* 942 F.2d 67, 73 (1st Cir.1991), in which a determination of qualified immunity as a matter of law, after assuming all facts in a plaintiff's favor, is "impossible" due to conflicting evidence as to the "underlying historical facts." Such facts could include "if what the policeman knew prior to the arrest is genuinely in dispute, and if a reasonable officer's perception of probable cause would differ depending on the correct version, that factual dispute must be resolved by a fact finder." *Id.* Here, there is no dispute about what Broderick knew at the time but, rather, the dispute is over whether his perception was accurate. Only the former is relevant to the qualified immunity analysis.

8. One can make a similar negative inference from that Finding that Lowinger was not dictating a memo since there is no evidence to that effect.

9. The issue facing the district court would have been quite different if, for example, Plaintiffs could provide evidence of actions or statements by Broderick at the time of the incident which would tend to negate his statements of his observations as provided in his affidavit. If such truly conflicting evidence were presented, then the court would have been faced with the scenario described in *Prokey,* note 7 *supra,* and entry of summary judgment for Broderick would be inappropriate.

*without prejudice the claims based on state law.*