UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT


No. 95-8026

UNITED STATES OF AMERICA,

Plaintiff, Appellee,

v.

JOHN W. BILLMYER, ET AL.,

Defendants, Appellees.


AMERICAN HONDA MOTOR COMPANY, INC.,

Appellant.


No. 95-1393

UNITED STATES OF AMERICA,

Plaintiff, Appellee,

v.

JOHN W. BILLMYER and
DENNIS JOSLEYN,

Defendants, Appellees.


LYON & LYON,

Appellant.


APPEALS FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Joseph A. DiClerico, Jr., U.S. District Judge] 



Before

Boudin, Circuit Judge, 

Bownes, Senior Circuit Judge, 

and Stearns,* District Judge. 



Steven M. Gordon with whom Shaheen, Cappiello, Stein & Gordon, 
Richard A. Gargiulo, Gargiulo, Rudnick & Gargiulo, Peter G. Callaghan, 
Richard J. Inglis and Marielise Kelly were on brief for appellant 
American Honda Motor Company, Inc.
Jeremiah T. O'Sullivan with whom Christopher H.M. Carter, Nancy 
W. Geary and Choate, Hall & Stewart were on brief for appellant Lyon & 
Lyon.
Paul Twomey with whom Mark L. Sisti was on brief for defendant, 
appellee Dennis Josleyn.



June 14, 1995




*Of the District of Massachusetts, sitting by designation.

BOUDIN, Circuit Judge. Two former employees of American 

Honda Motor Company, defendants John Billmyer and Dennis

Josleyn, have been on trial in the district court charged

with RICO, conspiracy and mail fraud violations arising from

an alleged commercial bribery scheme involving Honda dealers.

The defendants were indicted by a federal grand jury on March

11, 1994, and trial began in February 1995. About three

weeks into the trial, Josleyn served a subpoena duces tecum

on American Honda, pursuant to Fed. R. Crim. P. 17(c). It is

this demand that gave rise to the present proceeding in this

court.

The Josleyn subpoena demanded that American Honda

produce inter alia a file maintained by Sherry Cameron, an 

American Honda vice president, that consists largely of

information received from the company's outside counsel,

notes taken by her during conversations with counsel and

memoranda reflecting such information. American Honda moved

to quash the subpoena on attorney-client privilege and work-

product grounds. Its former law firm, Lyon & Lyon, joined

the motion, asserting that certain of the documents were its

work product and protected under the work-product doctrine.

The district court found that Josleyn had made the

threshold showing required under United States v. LaRouche 

Campaign, 841 F.2d 1176 (1st Cir. 1988), to warrant in camera 

review of the documents in the Cameron file. After some

-3- -3-

wrangling, American Honda submitted the file to the district

court, but appealed the court's LaRouche ruling. This Court 

dismissed that appeal on April 4, 1995, on the ground that

the district court's order was not final. United States v. 

Billmyer, No. 95-1324, 95-1325, slip op. at 1 (1st Cir., Apr. 

19, 1995). We recognized that American Honda might have

difficulty appealing any subsequent orders rejecting its

privilege claims because it would no longer have possession

of the files and could not automatically provoke a contempt

proceeding. Id. 

The district judge then conducted an in camera review of 

the Cameron file and issued a 40-page order appraising the

documents page by page. Although he found much of the file

to be protected either by attorney-client privilege or as

work product, the judge found that some of the documents were

unprotected, either because neither doctrine applied or

because the privilege had been waived. American Honda then

moved for the return of the sealed documents, so that it

could test the rulings in a contempt proceeding, but the

district court denied the motion and made ready to reveal the

disputed materials to the defendants.

American Honda and Lyon & Lyon then filed immediate

appeals, challenging the proposed disclosure of the

documents; in the alternative, writs of mandamus were sought

if the appeal were dismissed. American Honda objected to all

-4- -4-

of the disclosures while Lyon & Lyon restricted its claim to

one document. At appellants' request, this court on April

19, 1995, stayed the district court's order pending expedited

review. The district court then suspended the criminal

trial, awaiting a ruling by this court. Briefs were filed

here on April 28, 1995, and oral argument was heard on May 1,

1995.

On May 4, 1995, this court decided the case and released

a brief order in advance of this opinion, so that the

recessed criminal trial could be resumed immediately. Our

order stated that the district court's order directing

disclosure of the disputed materials did not qualify for

review either under the collateral order doctrine or through

mandamus. We directed entry of judgment, issuance of the

mandate forthwith, and dissolution of the April 19 stay.

This opinion is to explain the reasons for our dismissal of

the appeals and denial of mandamus.

The first question is whether American Honda and Lyon &

Lyon may appeal from the discovery order. Surprisingly, the

law in this area is more tangled than one would expect, given

the recurring nature of the problem. From the standpoint of

the proceeding itself--a criminal trial--there is no "final

decision" until the trial ends. Corporacion Insular de 

Seguros v. Garcia, 876 F.2d 254, 256 (1st Cir. 1989) 

("Garcia"). But the collateral order doctrine recognized in 

-5- -5-

Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 545-47 

(1949), provides one means for examining issues that arise in

the course of a continuing proceeding; failing that, mandamus

remains a possibility. Appellants invoke both concepts in

this court.

At the threshold Josleyn urges dismissal because a non-

party normally cannot appeal an order enforcing a subpoena

but must provoke a contempt order as the basis for an appeal.

United States v. Ryan, 402 U.S. 530 (1971). That path is no 

longer open to American Honda and may never have been

available to Lyon & Lyon. Given the judicial interest in

allowing a trial court to inspect disputed documents in 

camera, we decline to hold that a holder of documents 

forfeits appeal rights otherwise available by allowing such

an inspection.

Conversely, we do not think that the district court's

discovery order becomes a "final decision" under 28 U.S.C. 

1291 simply because contempt is not available as a vehicle

for review. Perlman v. United States, 247 U.S. 7, 13 (1918), 

and Cobbledick v. United States, 309 U.S. 323 (1940), might 

once have lent some support to such a theory; but Cobbledick 

was cited by the Supreme Court in adopting the collateral

order doctrine, Cohen, 337 U.S. at 546, and the Perlman- 

Cobbledick line of authority appears to have been absorbed 

-6- -6-

into the collateral order doctrine. Garcia, 876 F.2d at 258 

n.3.1 See also In re Oberkoetter, 612 F.2d 15, 17-18 (1st 

Cir. 1980). 

We turn now to the collateral order doctrine as the

primary basis for possible jurisdiction in this case. In

this circuit, to qualify for immediate appeal as a collateral

order, an order must involve

(1) an issue essentially unrelated to the merits of
the main dispute, capable of review without
disrupting the main trial; (2) a complete
resolution of the issue, not one that is
`unfinished' or `inconclusive'; (3) a right
incapable of vindication on appeal from final
judgment; and (4) an important and unsettled
question of controlling law, not merely a question
of the proper exercise of the trial court's
discretion.

United States v. Sorren, 605 F.2d 1211, 1213 (1st Cir. 1979). 

In addition, the Supreme Court has warned that interlocutory

appeals "are especially inimical to the effective and fair

administration of the criminal law." Abney v. United States, 

431 U.S. 651, 657 (1977).

The instant appeal meets the first three listed

requirements. The privilege and work product issues posed by

 

1The Fifth Circuit has so held in circumstances very
similar to our own case, In re grand Jury Proceedings, 43 
F.3d 966, 969-70 (1981), although the Third Circuit some
years before treated Perlman-Cobbledick as a separate 
doctrine. United States v. Cuthbertson, 651 F.2d 189, 194 
(3d Cir.), cert. denied, 454 U.S. 1056 (1981). Further 
uncertainty is added by a brief and ambiguous reference in
Church of Scientology v. United States, 113 S. Ct. 447, 452 
n.11 (1992), not cited to us by anyone.

-7- -7-

the discovery order have little to do with the guilt or

innocence of Billmyer and Josleyn; and the district court's

order is a complete resolution of those issues. As to the

third prong, any disclosure that occurs now will be virtually

unreviewable after a final judgment. In the case of an

acquittal, no appeal can ensue, and in the case of a

conviction, any appeal would be taken by defendants who

either sought or acquiesced in the disclosure.

The remaining, and most daunting, question is whether

this case presents a distinct and important legal issue.

Although not all circuits employ such a test, it enjoys

considerable support. See, e.g., 15A C. Wright, A. Miller & 

G. Cooper, Federal Practice and Procedure 3911, 3911.5 (2d 

ed. 1992) (citing case law); see also National Super Spuds, 

Inc. v. New York Mercantile Exchange, 591 F.2d 174, 180 (2d 

Cir. 1979) (Friendly, J.). Ordinarily, a discovery order

will meet the legal-importance test only if it presents a

claim of clear-cut legal error and not merely a challenge to

the district judge's factual determinations or the

application of a settled legal rule to the particular facts.

The requirement of an important legal issue rests in 

part on the increased likelihood that such an appeal may be

fruitful; legal rulings are reviewed de novo, while more 

deferential standards of review apply to factual findings or

application of known legal rules to specific facts. See In 

-8- -8-

re Extradition of Howard, 996 F.2d 1320, 1327-28 (1st Cir. 

1992). It is not easy to justify the interruption of an

ongoing proceeding, especially a criminal trial, where

affirmance is very likely because the issues are ones where

the district court is reviewed only for clear error or abuse

of discretion.

In addition, where the appeal occurs during a criminal

trial, a mistrial may result if the appeal process is

prolonged, raising both speedy trial and double jeopardy

concerns. United States v. Horn, 29 F.3d 754, 768 (1st Cir. 

1994). Were every factual dispute or law application issue

posed by a privilege claim open to interlocutory review in

mid-trial, it could take weeks to secure the necessary

transcripts, learn background facts that the trial judge has

absorbed over many months, and then replicate and review

district court rulings.

Admittedly, this collateral order test does create a

possibility that disclosure of documents may be ordered based

on a mistake of fact or a misapplication of settled law, and

the error may escape review. But litigation is full of such

instances: a temporary restraining order may cause

irreparable harm; burdensome discovery may be compelled

before review can be secured; a witness whose claim of

privilege is overruled may answer rather than risk contempt.

The finality rule reflects a compromise among competing

-9- -9-

interests. Given the protection afforded by the collateral

order doctrine and mandamus, we think that there is little

chance of any grave miscarriage of justice.

No one can make a seamless web out of all of the

decisions on collateral orders. The circuits are not

unanimous in every nuance, see 15A Wright, supra, 3911, and 

even within circuits, a wider scope of review may be

available for some interlocutory orders, such as an order

denying a claim of immunity or an order imposing sanctions on

a non-party for contempt. E.g., Lowinger v. Broderick, 50 

F.3d 61, 64 (1st Cir. 1995) (immunity). But we have set

forth the collateral order doctrine in this circuit as it

applies to discovery orders, and must respect our own

precedents. 

Turning to the merits, we conclude that the claims made

in these attempted appeals do not reveal any clear error of

law. The district judge at the outset accurately laid out

the rules applicable to the attorney-client privilege and

work-product protection, including the pertinent exceptions

and waiver. He reviewed the documents virtually line by

line, finding some pages or portions to be protected from

disclosure and some unprotected. Most of the arguments

raised on appeal are patently attacks on factual findings or

on the application of legal standards to those facts. To

review each ruling would require a time-consuming effort and

-10- -10-

entail a delay all out of proportion to any likelihood of a

reversal. 

But American Honda does raise one issue that involves an

arguable claim of legal error. In examining the Cameron

"legal file," the district judge concluded that, as to

certain portions of the materials protected by attorney-

client privilege, American Honda had waived the privilege.

American Honda says that the district judge misunderstood the

legal standard for an implied waiver of the privilege.

Specifically, the district court found that 

American Honda has disclosed to the United States
government considerable portions of the information
acquired through internal investigation into the
conduct comprising the charges against the
defendants in this case. . . . In light of
American Honda's disclosure of information acquired
through internal investigation, the court finds
that American Honda has waived the attorney-client
privilege with respect to documents containing
information acquired through internal
investigation.

The court then listed the portions of the materials as

to which American Honda had waived the privilege. American

Honda now contends that waiver results only when the client

reveals privileged communications to a third party, not when

the client reveals "the information" contained in privileged

communications. American Honda argues that the district

court clearly erred by finding a waiver from the company's

disclosure to the government of facts, not of privileged 

-11- -11-

communications. E.g., Upjohn Co. v. United States, 449 U.S. 

383, 395 (1980).

The district judge may have meant that privileged

communications were disclosed to the government and therefore 

privilege as to those topics was waived. On the other hand,

the judge twice referred to American Honda's disclosure of

"information," and did not indicate that any specific

privileged documents had been disclosed. So the judge may

have found waiver because the substance of the communications

had already been revealed to the government by American

Honda. If the court's ruling embraced this latter theory, we

agree that a legal issue is raised, but do not agree that

such a theory constitutes legal error.2

To put the matter in context, we note that the documents

as to which waiver was found appear to be pages or portions

of pages setting forth information gathered by Lyon & Lyon at

the behest of American Honda from sources whose identity is

not revealed. The information consists importantly of

allegations or evidence as to payments made by Honda dealers

to Honda employees. The documents, prepared by Lyon & Lyon,

Cameron or others, reflect the communication of these

 

2In noting the ambiguity, we intend no criticism. The
district judge's careful analysis, detailed order and
document-by-document review--undertaken in the middle of a
complex trial--were altogether admirable.

-12- -12-

allegations or evidence to Cameron or other executives of

American Honda.

It is fair to read the district court's order as a

finding that the same allegations or evidence were thereafter

disclosed by American Honda to government investigators. The

district court does not describe means of disclosure;

appellants' briefs shed no light upon the matter, but also do

not contest the finding that such a disclosure occurred. We

thus take the case as one in which American Honda received

factual information from its counsel, disclosed those facts

to the government, and now seeks to withhold the documents

that reflect the original communication of that information

to American Honda.

One might ask why there is any basis for a claim of

privilege in the first instance, since the privilege is

primarily designed to protect communications by the client to 

the lawyer in order to procure legal advise. See VIII J. 

Wigmore, Evidence 2320, at 628-29 (J. McNaughton, ed. 

1961). Possibly some of the information was provided to the

law firm by American Honda employees. Or the district court

may have deemed the material privileged (aside from waiver)

because the lawyer's communications to the client are

secondarily protected as needed to prevent inferring what the

client said to the lawyer. Id. 

-13- -13-

In all events, the question here is the effect of

American Honda's disclosure of this information to the

government. Wigmore tells us that "[j]udicial decision gives

no clear answer to th[e] question" of what constitutes "a

waiver by implication," and that only a few general instances

are well settled. Wigmore, supra 2327, at 635. For 

example, a client's offer of his own testimony as to specific 

facts does not waive the privilege as to his communications

with his attorney on the same subject, id. 2327, at 638; 

but this rule protects testimony given by the client in 

court, in order that the right to testify should not come at 

the price of one's ability to consult privately with counsel.

Id. 2327, at 637. Admitting that "authority is scanty," 

McCormick cites a number of cases in which disclosures by the

client, other than those involving in-court testimony, have

been held to be a waiver. I McCormick on Evidence 93, at 

377-48 (J. Strong ed., 4th ed. 1992).

Appellants respond that the privilege protects

"communications, not facts," Upjohn, 449 U.S. at 395, so that 

American Honda cannot have waived the privilege as to the

notes or memoranda merely by revealing to the government the

allegations or evidence recorded in the notes or memoranda.

The distinction is useful in some circumstances--say, where a

party tries to refuse to testify about an automobile accident

on the ground that he gave his counsel a private description

-14- -14-

of the same accident. But, once again, the distinction

appears to have little to do with the present problem.

Here, the gist of the matter is that counsel informed

the client of detailed evidence and allegations concerning

possible bribes of its employees, and the client chose to

make this same information available to the government. What

is sought by the defense in the criminal trial is merely the

recordations by or for the client of this same information.

The information now having been disclosed by the client to

the government, it is unclear what damage to the attorney-

client privilege can occur from making the corresponding

portions of the file available. the district court carefully

limited the disclosures to the factual allegations, excluding

any commentary on their legal implications.

Indeed, American Honda's disclosure to the government of

the factual information received from its law firm not only

reveals that information, and American Honda's knowledge of

it, but makes an inquiry into the source and basis for the

information hard to avoid. A risk of unfairness is evident

where information is provided to one side in a case (here,

the United States) and then an inquiry into its origin is

shielded by a claim of privilege. In a variety of contexts,

the affirmative use of privileged information has been held

to be a waiver of privilege. See P. Rice, Attorney-Client 

-15- -15-

Privilege in the United States 9.34, at 711, 938, 9.40  

950, at 752-53 (1993) (collecting cases).

Given the disclosure to the government, the waiver label

is presumptively apt. Waiver doctrine has only a few hard-

edged rules; as to many permutations, it is a fluid body of

precedent reflecting a variety of concerns, including an

insistence on real confidentiality and limitations based on

fairness. See "Developments in the Law--Privileged 

Communications," 98 Harv. L. Rev. 1450, 1629-32 (1985). In 

this instance, confidentiality has largely been dissolved by

American Honda's own actions.

One argument not made by appellants is that, as a matter 

of policy, private revelations to the government of possible

criminal conduct ought not waive the privilege as to third

parties. The concern, of course, is to encourage such

revelations. The general tendency of the law is to treat

waivers as an all-or-nothing proposition, e.g., ALI Model 

Code of Evidence, Rule 231, comment (a) (1942); but there is 

a trace of support for limited waivers in some cases

involving confidential disclosures to the government.

Diversified Industries, Inc. v. Meredith, 572 F.2d 606 (8th 

Cir. 1977). See generally Rice, supra, 9.86-9.87 (collecting 

and analyzing the cases).

On the other hand, it is a serious matter to withhold

from a defendant in a criminal case details that have already

-16- -16-

been made available to the government by a person claiming

the privilege. If there were ever an argument for limited

waiver, it might well depend importantly on just what had

been disclosed to the government and on what understandings.

Without intending to preclude such an argument in a future

case, we think that it is enough in this one to say that no

such claim of limited waiver has been argued to us.

This discussion also disposes of the alternative request

for mandamus. Mandamus is a discretionary writ available in

extraordinary circumstances to redress grievous error.

Garcia, 876 F.2d at 260. While it is not restricted to 

errors of law, it does require that the error be manifest and

the burden of showing manifest error is upon the applicant

for the writ. No such legal error has been shown and, as to

the district court's fact-findings and applications of

settled rules to particular facts, it is enough to say that

we have found no manifest error.

Judgment has been previously entered. We direct that

this opinion be filed and transmitted to the district court

and the parties to the appeal. Each side shall bear its own

costs.

It is so ordered. 

-17- -17-