**Henry C. SEEKAMP, Jr., Plaintiff,**

v.

**Ronald D. MICHAUD, Larry W. McAfee, Thomas G. Arnold, Kevin Curran, Steven J. Beal, Colonel Alfred R. Skolfield, Jr., Maine State Police, Defendants.**

**Civil No. 95–347–P–C.**

United States District Court,
D. Maine.

July 30, 1996.

Michael J. Wasman, South Portland, ME, for Plaintiff.

Leanne Robbin, Assistant Attorney General, Augusta, ME, for Defendants.

GENE CARTER, Chief Judge.

*ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY
JUDGMENT*

Plaintiff Henry Seekamp, Jr.,[1] has alleged claims for violations of his federal civil rights, 42 U.S.C. § 1983 (Counts I and VII). The Court now has before it the Motion for Summary Judgment of Defendants Colonel Alfred J. Skolfield, Jr., of the Maine State Police and Maine State Police Officers Ronald D. Michaud, Larry W. McAfee, Thomas G. Arnold, Kevin Curran, and Steven J. Beal (Docket No. 13). For the reasons discussed below, the Court will grant Defendants' Motion for Summary Judgment.

## I. FACTS

The facts admitted by Plaintiff are as follows. At approximately 1:00 a.m. on July 14, 1994, Henry Seekamp left his parents' home in Scarborough and drove off in his car. Defendants' Statement of Material Facts (Docket No. 14) ¶ 7; Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment (Docket No. 32) Material Facts in Dispute (Tab 1) (hereafter "Plaintiff's Material Facts") ¶ 7. While traveling south on Route 1 in Scarborough, he was clocked on radar traveling 63 in a 50–mile–per–hour–zone. Defendants' Statement of Material Facts ¶ 9 and Ex. A, Affidavit of Sgt. Eugene O'Neill ¶ 1; Plaintiff's Material Facts ¶ 9. Sgt. O'Neill illuminated his blue lights and signaled for Seekamp to stop his car. O'Neill Aff. ¶ 2; Defendants' Statement of Material Facts ¶ 10; Plaintiff's Material Facts ¶ 10. Seekamp did not comply. O'Neill Aff. at 2; Defendants' Statement of Material Facts ¶ 11; Plaintiff's Material Facts ¶ 11; Seekamp Dep. at 5.

The pursuit by Sgt. O'Neill continued through Scarborough into Saco. Defendants' Statement of Material Facts ¶ 12; Plaintiff's Material Facts ¶ 12. At that time, Saco Police units also joined the pursuit. Defendants' Statement of Material Facts ¶ 12; Plaintiff's Material Facts ¶ 12. Seekamp refused to stop. Seekamp Dep. at 7; O'Neill Aff. ¶¶ 3–4; Defendants' Statement of Material Facts ¶ 12; Plaintiff's Material Facts ¶ 12. Henry Seekamp then sped through the Saco toll booth, without stopping, onto the

---

1. Although the record includes the deposition of Henry C. Seekamp, Sr. as well as Henry C. Seekamp, Jr., all textual remarks to "Henry Seekamp" or "Seekamp" refer to Henry C. Seekamp, Jr.

southbound lanes of the Maine Turnpike. Seekamp Dep. at 7–8; O'Neill Aff. ¶ 4; Defendants' Statement of Material Facts ¶ 13; Plaintiff's Material Facts ¶ 13. When Seekamp continued to elude police officers who had entered the Maine Turnpike, the state police were requested to take over the pursuit. Deposition of Ronald D. Michaud at 11–12; Defendants' Statement of Material Facts ¶ 15; Plaintiff's Material Facts ¶ 15. At the time that state police officers were requested to respond, they were aware that the driver of the vehicle was engaging in the felony of eluding a police officer, 29 M.R.S.A. § 2501–A (repealed and replaced on January 1, 1995 by P.L.1995, Ch. 65, codified as 29–A M.R.S.A. § 2414). Michaud Dep. at 14; Deposition of Kevin Curran at 21–22; Deposition of Stephen J. Beal at 76–77; Defendants' Statement of Material Facts ¶ 15; Plaintiff's Material Facts ¶ 15.

Trooper Ronald D. Michaud was the first State Trooper to become involved in the pursuit. Michaud Dep. at 10–16; Beal Dep. at 16–17; O'Neill Aff. at ¶ 4; Defendants' Statement of Material Facts ¶ 16; Plaintiff's Material Facts ¶ 16. Trooper Michaud initially attempted to stop Seekamp's vehicle by executing a "rolling roadblock," driving his cruiser in front of Seekamp with the intent to slow his vehicle and bring it to a complete stop. Michaud Dep. at 17, 21; Defendants' Statement of Material Facts ¶ 17; Plaintiff's Material Facts ¶ 17. Seekamp does not contest Michaud's view that his vehicle was making "extremely reckless efforts" to get around Trooper Michaud's cruiser and that Seekamp would have collided with Michaud's cruiser had Michaud not moved out of the way. Michaud Dep. at 17–18, 20–21; O'Neill Aff. ¶ 4; Defendants' Statement of Material Facts ¶ 17; Plaintiff's Material Facts ¶ 17.

At some point north of the Wells interchange, Sgt. Stephen J. Beal, the shift supervisor, and Trooper Thomas G. Arnold joined the pursuit. Michaud Dep. at 29–33; Defendants' Statement of Material Facts ¶ 19 and Ex. C, Affidavit of Thomas G. Arnold ¶ 3; Beal Dep. at 20; Plaintiff's Material Facts ¶ 19. Troopers Beal and Michaud observed Seekamp's vehicle continue to operate erratically throughout the pursuit. Michaud Dep.

at 104–07; Beal Dep. at 22–23, 26–27, 74–76; Defendants' Statement of Material Facts ¶ 20; Plaintiff's Material Facts ¶ 20. At one point, Trooper Michaud clocked Seekamp at a speed of 97 miles per hour in a 65–mile–per–hour–zone. Michaud Dep. at 107; Seekamp Dep. at 9–10; Defendants' Statement of Material Facts ¶ 20; Plaintiff's Material Facts ¶ 20. In order to stop the Seekamp vehicle and protect the public from Seekamp's erratic operation, Trooper Michaud requested that a roadblock be set up north of the York toll plaza. Michaud Dep. at 46–48; Defendants' Statement of Material Facts ¶ 21; Plaintiff's Material Facts ¶ 21. As Michaud's shift supervisor, Sgt. Beal approved his request and directed Trooper Larry McAfee to set up a roadblock. Beal Dep. at 24–27, 78–79; Deposition of Larry W. McAfee at 24; Defendants' Statement of Material Facts ¶ 21; Plaintiff's Material Facts ¶ 21. Trooper McAfee set up a roadblock at a location approximately 800 feet north of the York toll plaza. McAfee Dep. at 45–71; Defendants' Statement of Material Facts ¶ 21 and Ex. E, Affidavit of Harrison Bragdon ¶ 3; Plaintiff's Material Facts ¶ 21.

Trooper McAfee directed a flatbed tractor trailer, driven by William Forshay of New Brunswick, to park with its cab at the end of the guardrail just north of the York toll plaza. McAfee Dep. at 45–47; Defendants' Statement of Material Facts ¶ 22 and Ex. F, Affidavit of William Forshay ¶ 3; Plaintiff's Material Facts ¶ 22. The tractor-trailer was carrying a load of finished lumber completely covered with white plastic, and it blocked most of the southbound travel lanes. McAfee Dep. at 45, 47; Forshay Aff. at ¶ 3; Defendants' Statement of Material Facts ¶ 22; Plaintiff's Material Facts ¶ 22. Trooper McAfee then parked his cruiser, pointing northward at the end of Forshay's flatbed trailer, with his blue lights and emergency equipment illuminated. McAfee Dep. at 47–48; Forshay Aff. ¶ 3; Defendants' Statement of Material Facts ¶ 22; Plaintiff's Material Facts ¶ 22. Trooper McAfee then directed other tractor-trailers to park along the breakdown lane. McAfee Dep. at 52; Defendants' Statement of Material Facts ¶ 23; Plaintiff's Material Facts ¶ 23. He left a gap of approximately 50 feet between the tractor-

trailers in the breakdown lane. McAfee Dep. at 52–54; Defendants' Statement of Material Facts ¶ 23 and Ex. D; Plaintiff's Material Facts ¶ 23.

The area of the roadblock was well-illuminated by overhead street lights, and the headlights of the northernmost tractor-trailer in the breakdown lane illuminated further the opening used to direct traffic through the roadblock. Forshay Aff. ¶ 3; McAfee Dep. at 74–75, 92–93; Beal Dep. at 84; Defendants' Statement of Material Facts ¶ 25 and Ex. D; Plaintiff's Material Facts ¶ 25. Plaintiff admits that the roadblock was visible from the point one rounds the bend on the turnpike to approach the York toll plaza—approximately 1500 feet away. Bragdon Aff. ¶ 3; McAfee Dep. at 32–34, 46, 51–52, 54; Defendants' Statement of Material Facts ¶ 25; Plaintiff's Material Facts ¶ 25. Other drivers approaching the roadblock in both trucks and passenger vehicles indicated to Trooper McAfee that the roadblock was clearly visible and that they had had sufficient time to stop for it. McAfee Dep. at 94–95; Defendants' Statement of Material Facts ¶ 25; Plaintiff's Material Facts ¶ 25. In fact, Trooper McAfee was able to direct approximately two dozen vehicles through the roadblock prior to the collision. McAfee Dep. at 95–96; Forshay Aff. ¶ 3; Defendants' Statement of Material Facts ¶ 25 and Ex. G, Affidavit of Edward Holt ¶ 4; Plaintiff's Material Facts ¶ 25. The vehicles traveled through the area between the tractor-trailer trucks parked in the breakdown lane, along the gravel shoulder adjacent to the breakdown lane, and then back onto the paved area leading to the toll booth. McAfee Dep. at 66–70; Holt Aff. ¶ 4; Defendants' Statement of Material Facts ¶ 25; Plaintiff's Material Facts ¶ 25.

At some point, Trooper Curran overtook the pursuit of Seekamp's vehicle in order to assist Trooper McAfee at the roadblock. Curran Dep. at 94–95, 70–75; Beal Dep. at 16–17, 24, 26, 83; Michaud Dep. at 43–45, 110–11; Defendants' Statement of Material Facts ¶ 26; Plaintiff's Material Facts ¶ 26. Trooper Curran parked his vehicle in one of the travel lanes in the area of the northernmost tractor-trailer, with his headlights pointing southeast, and the light bar located on top of his cruiser illuminated. Curran Dep. at 94–95; Defendants' Statement of Material Facts ¶ 26; Plaintiff's Material Facts ¶ 26. As Seekamp's vehicle approached the roadblock, the pursuing vehicles were several car lengths behind him. Seekamp Dep. at 29; Michaud Dep. at 113; Defendants' Statement of Material Facts ¶ 29; Plaintiff's Material Facts ¶ 29. Seekamp collided with the rear axle of the cab of Forshay's tractor-trailer.[2] McAfee Dep. at 106–07; Forshay Aff. ¶ 4; Seekamp Dep. at 11–12. As a result of the collision, Seekamp suffered a hairline fracture of his hip and a serious cut on his chin. Defendants' Statement of Material Facts ¶ 39; Plaintiff's Material Facts ¶ 39.

## II. DISCUSSION

Explaining the workings and purposes of the summary judgment procedure, the Court of Appeals for the First Circuit has stated:

Summary judgment has a special niche in civil litigation. Its "role is to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." *Wynne v. Tufts Univ. Sch. of Med.*, 976 F.2d 791, 794 (1st Cir.1992), *cert. denied* 507 U.S. 1030, 113 S.Ct. 1845, 123 L.Ed.2d 470 (1993). The device allows courts and litigants to avoid full-blown trials in unwinnable cases, thus conserving the parties' time and money, and permitting courts to husband scarce judicial resources.

A court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). . . .

Once a properly documented motion has engaged the gears of Rule 56, the party to whom the motion is directed can shut down the machinery only by showing that a trial-

---

**2.** The distance on the turnpike from the Scarborough toll booth to the York toll plaza is approximately 36 miles. Defendants' Statement of Fact at ¶ 40; Plaintiff's Material Facts in Dispute at 4.

worthy issue exists. *See National Amusements [v. Town of Dedham]*, 43 F.3d [731,] 735 [ (1st Cir.1995) ]. As to issues on which the summary judgment target bears the ultimate burden of proof, [he] cannot rely on an absence of competent evidence, but must affirmatively point to specific facts that demonstrate the existence of an authentic dispute. *See Garside [v. Osco Drug, Inc.]*, 895 F.2d [46,] 48 [ (1st Cir. 1990) ]. Not every factual dispute is sufficient to thwart summary judgment; the contested fact must be "material" and the dispute over it must be "genuine." In this regard, "material" means that a contested fact has the potential to change the outcome of the suit under the governing law if the dispute over it is resolved favorably to the nonmovant. *See [United States v.] One Parcel [of Real Property with Buildings]*, 960 F.2d [200,] 204 [ (1st Cir.1992) ]. By like token, "genuine" means that "the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party...." *Id.*

When all is said and done, the trial court must "view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor," *Griggs–Ryan [v. Smith]*, 904 F.2d [112,] 115 [ (1st Cir.1990) ], but paying no heed to "conclusory allegations, improbable inferences, [or] unsupported speculation," *Medina–Munoz [v. R.J. Reynolds Tobacco Co.]*, 896 F.2d [5,] 8 [ (1st Cir.1990) ]. If no genuine issue of material fact emerges, then the motion for summary judgment may be granted.

... [T]he summary judgment standard requires the trial court to make an essentially legal determination rather than to engage in differential factfinding....

*McCarthy v. Northwest Airlines, Inc.*, 56 F.3d 313, 314–15 (1st Cir.1995).

**3.** Although Plaintiff has not formally moved for his dismissal, Plaintiff admits that Trooper Defendant Arnold was involved in only the pursuit, and not the seizure, of Plaintiff and that "any Defendant Troopers who were not involved in the roadblock are not properly Defendants in this

## A. Individual Officers (Count I)

With regard to Trooper Defendants Michaud, McAfee, Curran, Arnold, and Beal, Seekamp contends that they violated his constitutional right to be free from unreasonable seizures by erecting a roadblock which was set up to, and ultimately did, prevent his escape.[3] Complaint (Docket No. 1) Count I. Defendants respond by arguing that they are entitled to qualified immunity because they had adequate justification to pursue and stop Seekamp and because the unconstitutionality of a "partial roadblock" is neither clearly established nor can it "be said to be a seizure." Defendants' Motion for Summary Judgment at 16, 18. Although disagreeing with Defendants' stated basis for their claim to qualified immunity, the Court nevertheless finds that the Trooper Defendants are entitled to qualified immunity in this case.

In order to overcome a qualified immunity defense, a plaintiff must allege and prove that a defendant official violated a clearly established constitutional right. In determining whether a constitutional right is clearly established, this Court must look first to decisions of the Supreme Court. In this case, the right to be free from unreasonable seizures involving roadblocks had been clearly established at the time of the incident giving rise to this action. *Brower v. County of Inyo*, 489 U.S. 593, 597, 109 S.Ct. 1378, 1381–82, 103 L.Ed.2d 628 (1989). In *Brower*, a fleeing car thief was killed when the vehicle he was driving crashed into a roadblock made up of an 18–wheel tractor-trailer positioned across both lanes of a two-lane highway, behind a curve, with police car lights positioned to blind the suspect as he came around the curve. The Supreme Court determined that a Fourth Amendment seizure occurred because the officer intentionally established a roadblock to stop a fleeing suspect, and the suspect's freedom of movement was, in fact, terminated by the means intentionally applied by the officer—the road-

action." Memorandum in Opposition to Defendants' Motion for Summary Judgment (Docket No. 32) Tab 3 at 12. Accordingly, the Court will grant the Motion for Summary Judgment on Count I as it relates to Defendant Arnold on that ground.

block.[4] In the course of explaining its decision to remand the case for consideration of whether the seizure was "unreasonable," the *Brower* Court established that a roadblock that is "set up in such a manner as to be likely to kill" a suspect is "unreasonable." *Id.* at 599, 109 S.Ct. at 1383. Therefore, before the incident in this case, the right of a fleeing suspect to be free from unreasonable seizure in the form of a roadblock designed to kill him was clearly established. *See Id.* Defendants argue that a seizure did not occur in this case because the roadblock used was only "partial." Defendants' Motion for Summary Judgment at 18. Defendants apparently think that a roadblock that affords some means of egress, however circuitous or well-concealed, precludes a finding that the roadblock constitutes a seizure.[5] Defendants have cited, and research has revealed, no case with any precedential authority to support this claim.[6] The alleged partialness of the roadblock is irrelevant to the determination of whether a seizure has taken place. What is relevant to the seizure inquiry is whether there was "a governmental termination of freedom of [Seekamp's] movement *through means intentionally applied.*" *Brower,* 489 U.S. at 597, 109 S.Ct. at 1381.

In this case, Seekamp was "seized" under the Fourth Amendment when the police succeeded in stopping him with the intentionally placed roadblock. The record in this case presents no evidence whatsoever contradicting the fact that a seizure occurred.

■ Although it was clearly established that the events in this case constituted a seizure, the deputies are still entitled to qualified immunity if it would not have been apparent to a reasonable official in their position that the seizure was "unreasonable" and thus violative of the Fourth Amendment. *See Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). Plaintiff claims that the roadblock was unreasonable because it was established in a way that was likely to "seriously injure or kill" him.[7] *See* Complaint ¶¶ 33–35. It is appropriate for the Court to consider the precise nature and character of the roadblock here, where the reasonableness of the seizure is at issue.[8] *Brower,* 489 U.S. at 599, 109 S.Ct. at 1382–83.

After a careful review of the record in this case, the Court concludes that no reasonable jury could find that this roadblock was unreasonable. Even if the roadblock were un-

---

**4.** The Supreme Court put it this way:
> It is clear ... that a Fourth Amendment seizure does not occur whenever there is a governmentally caused termination of an individual's freedom of movement (the innocent passerby), nor even whenever there is a governmentally caused and governmentally *desired* termination of an individual's freedom of movement (the fleeing felon), but only when there is a governmental termination of freedom of movement *through means intentionally applied.*

> *Brower,* 489 U.S. at 596–97, 109 S.Ct. at 1381 (emphasis in original).

**5.** Although Defendants point out that other vehicles passed around the roadblock, that was accomplished only with the assistance of Officer McAfee. The escape route consisted of making a 90–degree turn into a corridor (invisible to oncoming traffic) formed by the two tractor-trailers in the breakdown lane, and driving between the two tractor-trailers, and onto the gravel shoulder of the road until well past the roadblock.

**6.** Relying on an unpublished opinion in *Green v. Fulton,* Civil No. 94–82–P–H (D.Me. Sept. 16, 1994), Defendants apparently consider that a partial roadblock is somehow distinguishable from other types of roadblocks. This Court be-

lieves this to be an overbroad and undiscriminating construction of the holding in *Green,* one that may result in, if pursued in future, unnecessary exposure of police officers to liability.

At another point in their memorandum, Defendants seem to argue that "partial" roadblocks categorically do not violate any clearly established constitutional right. Defendants' Motion for Summary Judgment at 16 ("Accordingly, since their understanding was that Trooper McAfee would set up a 'partial roadblock,' they did not violate any of Henry Seekamp, Jr.'s 'clearly established' rights by requesting that such a roadblock be set up.").

**7.** There is no claim that the seizure was unreasonable by virtue of lack of probable cause.

**8.** Plaintiff quotes language from the discussion in *Brower* regarding whether a seizure had taken place and concludes that the fact that Seekamp "could have stopped his car before ramming the tractor trailer is irrelevant." Memorandum in Opposition to Defendants' Motion for Summary Judgment at 6–7. It is true that this inquiry is wholly irrelevant to the question of seizure, but it is relevant to the question of whether the seizure was "reasonable."

reasonable, a reasonable officer could have believed he was violating no clearly established constitutional right of Seekamp by installing this roadblock. *Lowinger v. Broderick,* 50 F.3d 61, 65 (1st Cir.1995) (quoting *McBride v. Taylor,* 924 F.2d 386, 389 (1st Cir.1991)).

Under these circumstances, the roadblock here was not unreasonable in the way that Seekamp alleges because it was not set up in "such a manner as to be likely to kill." *Brower,* 489 U.S. at 599, 109 S.Ct. at 1383. Plaintiff has admitted that the roadblock was "visible from the point one rounds the bend on the turnpike to approach the York toll plaza—approximately 1500 feet away." Bradgon Aff. ¶ 3; McAfee Dep. at 32–34, 46, 51–52, 54; Defendants' Statement of Material Facts ¶ 25; Plaintiff's Material Facts ¶ 25. Plaintiff further admits that the roadblock was illuminated such that other drivers traveling on the turnpike and approaching the roadblock could see the roadblock and had sufficient time to stop for it. McAfee Dep. at 94–95; Defendants' Statement of Material Facts ¶ 25; Plaintiff's Material Facts ¶ 25. Plaintiff has not even alleged that he lacked sufficient time and distance in order to stop safely at the roadblock. Accordingly, the Court finds, as a matter of law, that the roadblock in this case was not unreasonable in the manner that Seekamp alleges and, therefore, that there is no constitutional violation by the Trooper Defendants. Even if the roadblock were unreasonable, a reasonable officer could have believed he was violating no clearly established constitutional right of Seekamp by installing this roadblock which was well-lit and visible from a distance of 1500 feet.

### B. Supervisory Liability (Count VII)

■ With regard to Colonel Alfred Skolfield, Jr., Plaintiff contends that Skolfield proximately caused his injuries "[b]y permitting the pursuit and roadblock and/or by not clearly establishing procedures for engagement of a fleeing suspect and/or by failing to adequately train, supervise, educate, control or limit pursuits and roadblocks...." Complaint ¶ 38. The Plaintiff's supervisory claims must fail because, as discussed above,

the seizure was not unreasonable and thus there is no underlying constitutional violation. *Martinez v. Colon,* 54 F.3d 980, 990 (1st Cir.) ("Supervisory liability attaches only if the Plaintiff can demonstrate by material of evidentiary quality an affirmative link between the supervisor's conduct and the underlying section 1983 violation. Because no underlying constitutional violation ... occurred, ... no supervisory liability can be attributed to [the supervisor] under section 1983.") (citations and footnote omitted), *cert. denied sub nom. Martinez–Rodriguez v. Colon–Pizarro,* —— U.S. ——, 116 S.Ct. 515, 133 L.Ed.2d 423 (1995).

■ Even if there were a constitutional violation, Defendant Skolfield is still entitled to summary judgment in this case. It is well established that a supervisor may not be held liable under § 1983 on the basis of vicarious liability for the acts or omissions of his officers. Although supervisory officials cannot be held liable solely on the basis of their employment relationship with the wrongdoer, they may be found liable when their own action or inaction, including the situation where the "failure to train [or supervise officers] amounts to *deliberate indifference,*" is a proximate cause of the constitutional violation. *City of Canton v. Harris,* 489 U.S. 378, 388, 109 S.Ct. 1197, 1204, 103 L.Ed.2d 412 (1989); *see also Gutierrez–Rodriguez v. Cartagena,* 882 F.2d 553, 562 (1st Cir.1989) (Supervisory liability attaches under § 1983 if it is shown "that the supervisor's conduct or inaction amounted to a reckless or callous indifference to the constitutional rights of others."). Thus, in order to hold a Skolfield liable under § 1983, he must have been personally involved in the acts which caused the injury or there must be a causal connection between his acts or omissions and the constitutional violation to be redressed. In the instant case, Seekamp's claim against Skolfield does not depend on any personal involvement in the alleged incident. Rather, Seekamp's § 1983 claim rests on Skolfield's alleged failure to train and/or supervise his officers properly that caused the harm. Thus, Seekamp must show that: (1) Skolfield failed to supervise or train the officers; (2) a causal connection existed between the failure to supervise or train and the violation of the

plaintiff's rights; and (3) such failure to supervise or train amounted to deliberate indifference.

With regard to Plaintiff's failure-to-train claim, Plaintiff has admitted that all the state troopers involved in this matter had received training in the state police policies on roadblocks and pursuits during both their basic police training and in-service training prior to the pursuit which is the subject of this lawsuit. *See* Defendants' Statement of Material Facts ¶ 41 and Ex. L, Affidavit of Charles Howe ¶¶ 2–3; Plaintiff's Material Facts ¶ 41. Plaintiff has also admitted that Maine State Police officers' basic police training included a 48–hour course entitled the "Emergency Vehicle Operations Course," which provides hands-on training for high-speed driving and pursuits. Defendants' Statement of Material Facts ¶ 41; Plaintiff's Material Facts ¶ 41. In addition, Plaintiff has admitted that all state police officers, including all the officers involved in the incident giving rise to this lawsuit, are required to attend 20 hours of in-service training a year. Defendants' Statement of Material Facts ¶ 41; Plaintiff's Material Facts ¶ 41. In fact, Plaintiff admitted that Defendants in this case attended such a general in-service training in August 1993, which included a two-hour refresher course on the high-speed pursuit policy. Defendants' Statement of Material Facts ¶ 41; Plaintiff's Material Facts ¶ 41. Because there is *absolutely* no showing on these facts of "deliberate indifference," Plaintiff's failure-to-train claim cannot go forward to trial.

Although Plaintiff has not developed the parameters his theory of liability for the failure to supervise claim, this claim, in any case, also fails on this summary judgment record. The Maine State police have written guidelines to govern an officer's conduct in high-speed pursuit and roadblock situations. Defendants' Statement of Material Facts Exs. M and N. Colonel Skolfield stated in his deposition that the policies guiding the conduct of Maine State Police undergo rigorous review. Skolfield Dep. at 82, 88–89; Skolfield Dep. Ex. 5. Skolfield also stated that since becoming chief of the Maine State Police in June 1993, he has initiated a process of reviewing his department's policies. Skolfield Dep. at 28–30, 53. Moreover, as is exemplified by the above discussion regarding the initial as well as continuing training requirements for State Police Officers, Skolfield has been attentive to the need for training in the area of pursuits and roadblocks and has provided that training to his officers. Plaintiff does not controvert any of Defendant Skolfield's statements. Suffice it to say, Plaintiff has not met his burden of establishing that Colonel Skolfield was deliberately indifferent in supervising his officers. Based on this record, a reasonable trier of fact could not find inadequate supervision by Skolfield. Skolfield is entitled to qualified immunity on the failure to supervise claim.

### III. CONCLUSION

Accordingly, it is *ORDERED* that the Motion for Summary Judgment of Defendants Colonel Alfred R. Skolfield, Jr., of the Maine State Police and Maine State Police Officers Ronald D. Michaud, Larry W. McAfee, Thomas G. Arnold, Kevin Curran, and Steven J. Beal be, and it is hereby, *GRANTED* on Counts I and VII.