876 F.2d 254
 CORPORACION INSULAR de SEGUROS, Plaintiff, Appellee,
v.
Hon. Juan Antonio GARCIA, Defendant, Appellee.
Appeal of Dr. Juan B. APONTE.
CORPORACION INSULAR de SEGUROS, Plaintiff, Appellee,
v.
Hon. Juan Antonio GARCIA, Defendant, Appellee.
Appeal of Oscar RODRIGUEZ.
CORPORACION INSULAR de SEGUROS, Plaintiff, Appellee,
v.
Hon. Juan Antonio GARCIA, Defendant, Appellee.
Appeal of Hon. Miguel A. HERNANDEZ-AGOSTO.
 Nos. 89-1308, 89-1336, 89-1337.
 United States Court of Appeals,
First Circuit.
 Heard May 2, 1989.
Decided June 1, 1989.
 
 Marcos A. Ramirez Lavandero with whom Ramirez & Ramirez, was on brief, for appellants Dr. Juan B. Aponte and Hon. Miguel A. Hernandez-Agosto.
 Jose Luis Gonzalez Castaner with whom Hon. Hector Rivera Cruz, Secretary of Justice, and Ramirez & Ramirez were on brief, for appellant Oscar Rodriguez.
 Sheldon H. Nahmod with whom Jesus R. Rabell Mendez and Cancio, Nadal & Rivera, were on brief, for defendant, appellee.
 Before CAMPBELL, Chief Judge, SELYA, Circuit Judge, and GRAY,* Senior District Judge.
 LEVIN H. CAMPBELL, Chief Judge.
 
 
 1
 These are appeals from discovery orders directed to an aide to the President of the Puerto Rico Senate (appellant Juan B. Aponte) and an aide to the Governor of Puerto Rico (appellant Oscar Rodriguez). 709 F.Supp. 288 (D.P.R.1989). The underlying case involves a challenge to the constitutionality of a Puerto Rico statute setting up an insurers' syndicate for underwriting medical malpractice insurance. Plaintiff Corporacion Insular de Seguros ("CIS") seeks to obtain from Aponte and Rodriguez information about behind the scenes events related to the consideration and passage of the challenged statute in the Puerto Rico legislature. CIS apparently hopes that this information will help it to show that the statute is not rationally related to its avowed purposes.[1] To this end, CIS served subpoenas duces tecum on appellants Aponte and Rodriguez seeking
 
 
 2
 All documents regarding the medical malpractice crisis for the years 1984-1988, including all studies in your possession regarding said crisis (including previous years). All correspondence regarding the [Insurers] Syndicate [for the Joint Underwriting of Medico-Hospital Professional Liability Insurance] with the Executive Branch, the Commissioner of Insurance, the Legislative Branch, and the insurance companies, doctors, hospitals, advisors, the Medical Association and the "Comite Coordinador de Medicos." All documents regarding the task forces appointed by the Governor and the President of the Senate to deal with the medical malpractice crisis. Include your Curriculum Vitae.
 
 
 3
 Upon appellants Aponte's and Rodriguez's assertion of legislative and executive privilege, the district court issued a protective order and reviewed in camera those documents submitted by appellants in response to the subpoenas. The court then issued an opinion and order with respect to the discovery requests in which it discussed Aponte's and Rodriguez's claims of privilege. The court ordered Aponte to produce to plaintiff all four of the documents that he had submitted to the court, but ruled that Aponte could not be deposed by plaintiff. The court ordered Rodriguez to produce to plaintiff some, but not all, of the 55 documents that were reviewed in camera. The court also ruled that Rodriguez could be deposed with regard to the unprotected information. The district court continued its earlier protective order, providing that the information produced was not to be disclosed to anyone other than plaintiff's counsel and their independent experts. See In re Insurers Syndicate for the Joint Underwriting of Medico-Hospital Professional Liability Insurance, 864 F.2d 208, 212-14 (1st Cir.1988) (reprinting text of the district court's "Confidentiality Order").
 
 
 4
 Aponte and Rodriguez appeal from these orders. In addition, the district court allowed Miguel A. Hernandez Agosto, President of the Puerto Rico Senate (and Aponte's employer) to intervene for the purpose of appealing from the district court's denial of the claim of legislative privilege for communications from Aponte to Hernandez. In the alternative, appellants petition for writs of mandamus. We conclude that we lack jurisdiction to entertain these appeals at this time. Nor do we find mandamus to be appropriate in this situation. If Aponte and Rodriguez wish to challenge the discovery orders, they will have to take the usual course in such matters: defy the order and run the risk of being held in contempt. A contempt finding, when applied to a non-party, is final as to that individual and may then be appealed.
 
 
 5
 Discovery orders, whether directed at parties or at non-parties to the underlying litigation, are not generally appealable as "final decisions of the district courts," 28 U.S.C. Sec. 1291 (1982), because they do not "end[ ] the litigation on the merits and leave[ ] nothing for the court to do but execute the judgment." Catlin v. United States, 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911 (1945). See, e.g., In re Recticel Foam Corp., 859 F.2d 1000, 1002 (1st Cir.1988). Neither are discovery orders generally appealable as injunctions under 28 U.S.C. Sec. 1292(a)(1) (1982). See Gulfstream Aerospace Corp. v. Mayacamas Corp., 485 U.S. 271, 108 S.Ct. 1133, 1138, 99 L.Ed.2d 296 (1988) ("An order by a federal court that relates only to the conduct or progress of litigation before that court ordinarily is not considered an injunction and therefore is not appealable under Sec. 1292(a)(1).") (citations omitted). Finally, discovery orders are not generally "collateral orders" that are appealable as an exception to the final judgment rule under Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 545-47, 69 S.Ct. 1221, 1225-26, 93 L.Ed. 1528 (1949). See Boreri v. Fiat S.P.A., 763 F.2d 17, 21-26 (1st Cir.1985). To qualify for the collateral order exception, an order must, among other things, be "effectively unreviewable on appeal from a final judgment." Coopers & Lybrand v. Livesay, 437 U.S. 463, 468, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978). In the present case, appellants Aponte and Rodriguez can gain the right of appeal from the discovery order by defying it, being held in contempt, and then appealing from the contempt order, which would be a final judgment as to them.
 
 
 6
 The rule that non-parties who wish to appeal a discovery order must first defy it and be held in contempt was first stated by the Supreme Court in Alexander v. United States, 201 U.S. 117, 26 S.Ct. 356, 50 L.Ed. 686 (1906). In Alexander, non-party witnesses were ordered by the trial court to produce documents and answer questions before a special examiner. The Supreme Court held that an appeal could not lie from these orders. Instead, the Court directed,
 
 
 7
 Let the court go further and punish the witness for contempt of its order, then arrives a right of review, and this is adequate for his protection without unduly impeding the progress of the case.... This power to punish being exercised the matter becomes personal to the witness and a judgment as to him. Prior to that the proceedings are interlocutory in the original suit.
 
 
 8
 201 U.S. at 121-22, 26 S.Ct. at 357-58. The Supreme Court applied this rule in Cobbledick v. United States, 309 U.S. 323, 60 S.Ct. 540, 84 L.Ed. 783 (1940), in the context of a witness's attempted appeal of an order to testify before a grand jury. Justice Frankfurter observed in Cobbledick that the Alexander rule is an application of the broader finality principle that is necessary to avoid the disruptive effects of piecemeal litigation. Id. 309 U.S. at 326, 60 S.Ct. at 541-42.
 
 
 9
 The Alexander rule was reaffirmed more recently in United States v. Ryan, 402 U.S. 530, 91 S.Ct. 1580, 29 L.Ed.2d 85 (1971). The Ryan Court held that the respondent could not appeal from the district court's denial of his motion to quash a grand jury subpoena requiring the production of records under his control in Kenya. The Court noted,
 
 
 10
 [C]ompliance is not the only course open to respondent. If, as he claims, the subpoena is unduly burdensome or otherwise unlawful, he may refuse to comply and litigate those questions in the event that contempt or similar proceedings are brought against him. Should his contentions be rejected at that time by the trial court, they will then be ripe for appellate review.
 
 
 11
 Id. at 532, 91 S.Ct. at 1582 (footnote omitted).
 
 
 12
 The Alexander rule requires us to dismiss this appeal for lack of jurisdiction, at least with respect to appellants Aponte and Rodriguez. The protestations of appellants notwithstanding, there is no special exception to the Alexander rule in cases involving claims of legislative or executive privilege. Appellants point out that government officials who have been sued are allowed to bring interlocutory appeals from the denial to them of a governmental immunity. See, e.g., Mitchell v. Forsyth, 472 U.S. 511, 524-30, 105 S.Ct. 2806, 2814-18, 86 L.Ed.2d 411 (1985) (courts of appeals have jurisdiction to review on an interlocutory basis a district court's denial of qualified immunity). But the availability of an interlocutory appeal in such cases, where the official himself has been sued, has little connection with the situation in the present case in which the officials themselves are not being sued and are protesting only a discovery order. Appellants' arguments in this regard seem to us to confuse claims of governmental immunity with claims, like the present ones, of governmental privilege.
 
 
 13
 It is true that in United States v. Nixon, 418 U.S. 683, 690-92, 94 S.Ct. 3090, 3098-3100, 41 L.Ed.2d 1039 (1974), the Supreme Court allowed President Nixon to appeal from a discovery order without first incurring a contempt citation on the ground that "[t]o require a President of the United States to place himself in the posture of disobeying an order of a court merely to trigger the procedural mechanism for review of the ruling would be unseemly, and would present an unnecessary occasion for constitutional confrontation between two branches of the Government." Id. at 691-92, 94 S.Ct. at 3099-3100. But Nixon was a unique case, and we do not believe that the Court meant to extend it to any government official other than the President himself. See In re Attorney General of the United States, 596 F.2d 58, 62 (2d Cir.) (refusing to extend the Nixon exception to the Attorney General), cert. denied, 444 U.S. 903, 100 S.Ct. 217, 62 L.Ed.2d 141 (1979).[2]
 
 
 14
 Thus, we dismiss the appeals of Aponte and Rodriguez for lack of appellate jurisdiction. Not only is this result compelled by the decisions of the Supreme Court in Alexander, Cobbledick and Ryan, but it also comports with our own view that the best way to minimize the delay of litigation, while at the same time preserving the right to appeal illegal or inappropriate discovery orders, is to put the witness to the acid test. The witness must decide if his reasons for resisting the court order are good enough--and his resolve strong enough--to incur the risk of a contempt citation. The forced choice is a useful filter, helping to separate those cases in which appellate review of the discovery order is worthwhile from those in which it is not. Judge Friendly put the matter well in a case similar to the present one:
 
 
 15
 Both sides benefit from having a second look. The person ordered to respond may decide ... that the importance of the issue and the risk of adverse appellate determination do not warrant being branded as a contemnor.... Conversely the person seeking the information, particularly if he is the plaintiff, may decide that the quest is not important enough to seek a contempt citation, thereby entailing the delay of an appeal....
 
 
 16
 National Super Spuds v. New York Mercantile Exchange, 591 F.2d at 180 (citation omitted).
 
 
 17
 Appellant Hernandez, President of the Puerto Rico Senate, argues that the Alexander rule is not applicable to his appeal. Because Hernandez himself was not ordered to produce any documents, he cannot follow the Alexander route of defying the order and then appealing from a possible contempt citation. Hernandez argues that the discovery order, as it applies to communications between him and his aide, should be immediately appealable under the Supreme Court's holding in Perlman v. United States, 247 U.S. 7, 38 S.Ct. 417, 62 L.Ed. 950 (1918).
 
 
 18
 In Perlman, the district court had directed its own clerk to produce exhibits which were the property of appellant Perlman and which, appellant claimed, were immune from production. Because Perlman himself was not being required to do anything, he could not defy the order and invite a contempt citation. The Supreme Court held that the order was immediately reviewable, on the theory that without such review Perlman would have been "powerless to avert the mischief of the order." Id. at 13, 38 S.Ct. at 420. In the intervening years, Perlman has been viewed restrictively, as an example of "the limited class of cases where denial of immediate review would render impossible any review whatsoever of an individual's claims." United States v. Ryan, 402 U.S. at 533, 91 S.Ct. at 1582. In such rare cases, an exception to the Alexander principle may be permitted.[3]
 
 
 19
 We decline to make such an exception in the present case. We find persuasive the Second Circuit's view of a similar situation in National Super Spuds. In National Super Spuds, an employee of the Commodity Futures Trading Commission was ordered to answer questions about a potato futures contract. Neither the employee nor the Commission was a party to the suit, and both the employee and the Commission raised a claim of governmental privilege. The court did not view the case as an appropriate one for application of the Perlman exception. Unlike the situation in Perlman, where there was no relationship between the person claiming a privilege (Perlman) and the person to whom the court order was directed (the clerk of the district court), the person directed to answer questions in National Super Spuds was an employee of an agency that joined him in asserting a privilege. In such a situation, "where the target of the disclosure order is both subject to the control of the person or entity asserting the privilege and is a participant in the relationship out of which the privilege emerges," National Super Spuds, 591 F.2d at 180 n. 7, the need for the Perlman exception is diminished. In such a case, the government official who is the target of the disclosure order can be expected--assuming that the matter is important enough to him--to defy the order and court a contempt citation in order to preserve his employer's, as well as his own, right to appellate review of their claims of privilege. In such a case, moreover, while the government employee must take a risk, he need not be placed in the position of sacrificial lamb. As Judge Friendly observed in National Super Spuds,
 
 
 20
 When a present or former Government employee makes a non-frivolous assertion of governmental privilege at his agency's request, citation for civil contempt without any other immediate sanction pending prompt application for review will ordinarily suffice; if the district court goes further, there is always the possibility of a speedy application to the court of appeals for a stay.
 
 
 21
 Id. at 180 (footnote omitted). Although we do not prejudge the matter, we believe that such a "softened" contempt requirement might be appropriate in the present case.[4]
 
 
 22
 This court followed the rationale of National Super Spuds in In re Oberkoetter, 612 F.2d 15 (1st Cir.1980), in which we refused to allow an unnamed client to appeal from a court order that the client's lawyer testify before a grand jury. We distinguished Perlman as a "unique case" in which there was no relation between the holder of the privilege (Perlman) and the target of the court's order (the clerk of the district court). In re Oberkoetter, 612 F.2d at 18. We noted that
 
 
 23
 Perlman has no relation to the clerk comparable to that of a client with an attorney. An attorney, in his client's interest and as proof of his own stout-heartedness, might be willing to defy a testimonial order and run the risk of a contempt proceeding. But no clerk would do that for a litigant.
 
 
 24
 Id.[5] But see In re Grand Jury Subpoena Duces Tecum, 731 F.2d 1032, 1036 n. 3 (2d Cir.1984) (allowing an immediate appeal by a client in a case similar to In re Oberkoetter ).
 
 
 25
 Following the logic of National Super Spuds and In re Oberkoetter, we hold that Senate President Hernandez cannot avail himself of the Perlman exception to obtain immediate appeal of the discovery order directed at his aide Aponte. Unlike the district court clerk in Perlman, but like the Commodity Futures Trading Commission employee in National Super Spuds, Aponte himself may reasonably be expected to risk a contempt citation in order to preserve both his own and his employer's right to appellate review of their joint claim of privilege. We do not believe, moreover, that Aponte will be placed in an impossible position by our insistence that if he wishes to appeal the discovery order, he must first defy it. Thus, we hold that we have no jurisdiction, whether under the Perlman exception or any other rubric, to entertain Senate President Hernandez's appeal.
 
 
 26
 Finally, we dismiss appellants' petition for a writ of mandamus as being inappropriate to the situation at hand. The Supreme Court has recently reiterated that "the writ of mandamus is an extraordinary remedy, to be reserved for extraordinary situations." Gulfstream Aerospace Corp. v. Mayacamas Corp., 108 S.Ct. at 1143 (citations omitted). We do not view the present case as such a situation. See also In re Recticel Foam Corp., 859 F.2d at 1006 (noting that interlocutory procedural orders, including those related to discovery, rarely will warrant mandamus relief).
 
 
 27
 Appeals dismissed. Costs to plaintiff.
 
 
 
 *
 Of the Central District of California, sitting by designation
 
 
 [1]
 Because we dispose of this appeal on jurisdictional grounds, we do not consider whether the information sought is truly germane to plaintiff's constitutional challenge to the Puerto Rico statute
 
 
 [2]
 The Fifth Circuit in earlier cases has allowed immediate appeals from discovery orders by governmental officials asserting a governmental privilege when the government is not a party to the lawsuit. See, e.g., Cates v. LTV Aerospace Corp., 480 F.2d 620, 622 (5th Cir.1973); Carr v. Monroe Manufacturing Co., 431 F.2d 384, 387 (5th Cir.1970), cert. denied, 400 U.S. 1000, 91 S.Ct. 456, 27 L.Ed.2d 451 (1971). But these holdings not only have been criticized by others, see, e.g., National Super Spuds, Inc. v. New York Mercantile Exchange, 591 F.2d 174 (2d Cir.1979); Newton v. National Broadcasting Co., 726 F.2d 591, 593-94 (9th Cir.1984), but also have been disavowed by the Fifth Circuit itself in a more recent case. See Branch v. Phillips Petroleum Co., 638 F.2d 873, 877-79 (5th Cir.1981)
 
 
 [3]
 Although Perlman predated Cohen v. Beneficial Industrial Loan Corp. by some 30 years, the Perlman exception might be viewed as a special case of the Cohen collateral order exception to the finality rule. Because Perlman could not himself incur a contempt citation and thus secure an appeal, his claims of privilege would otherwise be "effectively unreviewable on appeal from a final judgment." Coopers & Lybrand v. Livesay, 437 U.S. at 468, 98 S.Ct. at 2458. See also United States v. Sorren, 605 F.2d 1211, 1213 (1st Cir.1979) (noting that to be appealable under the Cohen exception, an order must involve, among other things, "a right incapable of vindication on appeal from final judgment"); In re Continental Investment Corp., 637 F.2d 1, 6 (1st Cir.1980) (suggesting that under the Cohen doctrine "the possibility of irreparable harm resulting from a delay in appellate review is the dispositive criterion of interlocutory appealability")
 
 
 [4]
 In National Super Spuds, the court also noted, without deciding the point, that sanctions might possibly run "against the Chairman or the members of the Commission who would have directed the witness to flout the court's order, rather than against a subordinate employee or former employee complying with such directions." 591 F.2d at 180 n. 9. Although we do not decide the point either, a similar strategy of directing sanctions at superiors might possibly be appropriate in the present case
 
 
 [5]
 The writer of In re Oberkoetter, Judge Wyzanski (speaking at least for himself), at 612 F.2d at 19, expressed doubts, in light of National Super Spuds, about the continuing validity of United States v. Doe, 455 F.2d 753, 757 (1st Cir.), vacated and remanded on other grounds sub nom. Gravel v. United States, 408 U.S. 606, 92 S.Ct. 2614, 33 L.Ed.2d 583 (1972), a case in which this circuit permitted a United States senator to appeal, on grounds of legislative privilege, an order directing his legislative assistant and a book publisher to testify before a grand jury. We reject the logic of United States v. Doe, at least when applied to cases in which "the witness ... could be expected to defend the privilege by risking contempt if the claim of privilege had merit." In re Oberkoetter, 612 F.2d at 18