USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 95-8026 UNITED STATES OF AMERICA, Plaintiff, Appellee, v. JOHN W. BILLMYER, ET AL., Defendants, Appellees. __________ AMERICAN HONDA MOTOR COMPANY, INC., Appellant. ___________________ No. 95-1393 UNITED STATES OF AMERICA, Plaintiff, Appellee, v. JOHN W. BILLMYER and DENNIS JOSLEYN, Defendants, Appellees. ________ LYON & LYON, Appellant. ____________________ APPEALS FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW HAMPSHIRE [Hon. Joseph A. DiClerico, Jr., U.S. District Judge] ___________________ ____________________ Before Boudin, Circuit Judge, _____________ Bownes, Senior Circuit Judge, ____________________ and Stearns,* District Judge. ______________ ____________________ Steven M. Gordon with whom Shaheen, Cappiello, Stein & Gordon, ________________ ____________________________________ Richard A. Gargiulo, Gargiulo, Rudnick & Gargiulo, Peter G. Callaghan, ___________________ ____________________________ __________________ Richard J. Inglis and Marielise Kelly were on brief for appellant __________________ ________________ American Honda Motor Company, Inc. Jeremiah T. O'Sullivan with whom Christopher H.M. Carter, Nancy _______________________ _______________________ _____ W. Geary and Choate, Hall & Stewart were on brief for appellant Lyon & ________ ______________________ Lyon. Paul Twomey with whom Mark L. Sisti was on brief for defendant, ___________ ______________ appellee Dennis Josleyn. ____________________ June 14, 1995 ____________________ ___________________ *Of the District of Massachusetts, sitting by designation. BOUDIN, Circuit Judge. Two former employees of American _____________ Honda Motor Company, defendants John Billmyer and Dennis Josleyn, have been on trial in the district court charged with RICO, conspiracy and mail fraud violations arising from an alleged commercial bribery scheme involving Honda dealers. The defendants were indicted by a federal grand jury on March 11, 1994, and trial began in February 1995. About three weeks into the trial, Josleyn served a subpoena duces tecum on American Honda, pursuant to Fed. R. Crim. P. 17(c). It is this demand that gave rise to the present proceeding in this court. The Josleyn subpoena demanded that American Honda produce inter alia a file maintained by Sherry Cameron, an __________ American Honda vice president, that consists largely of information received from the company's outside counsel, notes taken by her during conversations with counsel and memoranda reflecting such information. American Honda moved to quash the subpoena on attorney-client privilege and work- product grounds. Its former law firm, Lyon & Lyon, joined the motion, asserting that certain of the documents were its work product and protected under the work-product doctrine. The district court found that Josleyn had made the threshold showing required under United States v. LaRouche _____________ ________ Campaign, 841 F.2d 1176 (1st Cir. 1988), to warrant in camera ________ _________ review of the documents in the Cameron file. After some -3- -3- wrangling, American Honda submitted the file to the district court, but appealed the court's LaRouche ruling. This Court ________ dismissed that appeal on April 4, 1995, on the ground that the district court's order was not final. United States v. ______________ Billmyer, No. 95-1324, 95-1325, slip op. at 1 (1st Cir., Apr. ________ 19, 1995). We recognized that American Honda might have difficulty appealing any subsequent orders rejecting its privilege claims because it would no longer have possession of the files and could not automatically provoke a contempt proceeding. Id. ___ The district judge then conducted an in camera review of _________ the Cameron file and issued a 40-page order appraising the documents page by page. Although he found much of the file to be protected either by attorney-client privilege or as work product, the judge found that some of the documents were unprotected, either because neither doctrine applied or because the privilege had been waived. American Honda then moved for the return of the sealed documents, so that it could test the rulings in a contempt proceeding, but the district court denied the motion and made ready to reveal the disputed materials to the defendants. American Honda and Lyon & Lyon then filed immediate appeals, challenging the proposed disclosure of the documents; in the alternative, writs of mandamus were sought if the appeal were dismissed. American Honda objected to all -4- -4- of the disclosures while Lyon & Lyon restricted its claim to one document. At appellants' request, this court on April 19, 1995, stayed the district court's order pending expedited review. The district court then suspended the criminal trial, awaiting a ruling by this court. Briefs were filed here on April 28, 1995, and oral argument was heard on May 1, 1995. On May 4, 1995, this court decided the case and released a brief order in advance of this opinion, so that the recessed criminal trial could be resumed immediately. Our order stated that the district court's order directing disclosure of the disputed materials did not qualify for review either under the collateral order doctrine or through mandamus. We directed entry of judgment, issuance of the mandate forthwith, and dissolution of the April 19 stay. This opinion is to explain the reasons for our dismissal of the appeals and denial of mandamus. The first question is whether American Honda and Lyon & Lyon may appeal from the discovery order. Surprisingly, the law in this area is more tangled than one would expect, given the recurring nature of the problem. From the standpoint of the proceeding itself--a criminal trial--there is no "final decision" until the trial ends. Corporacion Insular de _______________________ Seguros v. Garcia, 876 F.2d 254, 256 (1st Cir. 1989) _______ ______ ("Garcia"). But the collateral order doctrine recognized in ______ -5- -5- Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 545-47 _____ _____________________________ (1949), provides one means for examining issues that arise in the course of a continuing proceeding; failing that, mandamus remains a possibility. Appellants invoke both concepts in this court. At the threshold Josleyn urges dismissal because a non- party normally cannot appeal an order enforcing a subpoena but must provoke a contempt order as the basis for an appeal. United States v. Ryan, 402 U.S. 530 (1971). That path is no _____________ ____ longer open to American Honda and may never have been available to Lyon & Lyon. Given the judicial interest in allowing a trial court to inspect disputed documents in __ camera, we decline to hold that a holder of documents ______ forfeits appeal rights otherwise available by allowing such an inspection. Conversely, we do not think that the district court's discovery order becomes a "final decision" under 28 U.S.C.  1291 simply because contempt is not available as a vehicle for review. Perlman v. United States, 247 U.S. 7, 13 (1918), _______ _____________ and Cobbledick v. United States, 309 U.S. 323 (1940), might __________ _____________ once have lent some support to such a theory; but Cobbledick __________ was cited by the Supreme Court in adopting the collateral order doctrine, Cohen, 337 U.S. at 546, and the Perlman- _____ ________ Cobbledick line of authority appears to have been absorbed __________ -6- -6- into the collateral order doctrine. Garcia, 876 F.2d at 258 ______ n.3.1 See also In re Oberkoetter, 612 F.2d 15, 17-18 (1st ________ __________________ Cir. 1980).  We turn now to the collateral order doctrine as the primary basis for possible jurisdiction in this case. In this circuit, to qualify for immediate appeal as a collateral order, an order must involve (1) an issue essentially unrelated to the merits of the main dispute, capable of review without disrupting the main trial; (2) a complete resolution of the issue, not one that is `unfinished' or `inconclusive'; (3) a right incapable of vindication on appeal from final judgment; and (4) an important and unsettled question of controlling law, not merely a question of the proper exercise of the trial court's discretion. United States v. Sorren, 605 F.2d 1211, 1213 (1st Cir. 1979). _____________ ______ In addition, the Supreme Court has warned that interlocutory appeals "are especially inimical to the effective and fair administration of the criminal law." Abney v. United States, _____ _____________ 431 U.S. 651, 657 (1977). The instant appeal meets the first three listed requirements. The privilege and work product issues posed by  ____________________ 1The Fifth Circuit has so held in circumstances very similar to our own case, In re grand Jury Proceedings, 43 _____________________________ F.3d 966, 969-70 (1981), although the Third Circuit some years before treated Perlman-Cobbledick as a separate __________________ doctrine. United States v. Cuthbertson, 651 F.2d 189, 194 _____________ ___________ (3d Cir.), cert. denied, 454 U.S. 1056 (1981). Further ____________ uncertainty is added by a brief and ambiguous reference in Church of Scientology v. United States, 113 S. Ct. 447, 452 _____________________ _____________ n.11 (1992), not cited to us by anyone. -7- -7- the discovery order have little to do with the guilt or innocence of Billmyer and Josleyn; and the district court's order is a complete resolution of those issues. As to the third prong, any disclosure that occurs now will be virtually unreviewable after a final judgment. In the case of an acquittal, no appeal can ensue, and in the case of a conviction, any appeal would be taken by defendants who either sought or acquiesced in the disclosure. The remaining, and most daunting, question is whether this case presents a distinct and important legal issue. Although not all circuits employ such a test, it enjoys considerable support. See, e.g., 15A C. Wright, A. Miller & ___ ____ G. Cooper, Federal Practice and Procedure 3911, 3911.5 (2d ______________________________ ed. 1992) (citing case law); see also National Super Spuds, ________ _____________________ Inc. v. New York Mercantile Exchange, 591 F.2d 174, 180 (2d ____ _____________________________ Cir. 1979) (Friendly, J.). Ordinarily, a discovery order will meet the legal-importance test only if it presents a claim of clear-cut legal error and not merely a challenge to the district judge's factual determinations or the application of a settled legal rule to the particular facts. The requirement of an important legal issue rests in _____ part on the increased likelihood that such an appeal may be fruitful; legal rulings are reviewed de novo, while more ________ deferential standards of review apply to factual findings or application of known legal rules to specific facts. See In ___ __ -8- -8- re Extradition of Howard, 996 F.2d 1320, 1327-28 (1st Cir. _________________________ 1992). It is not easy to justify the interruption of an ongoing proceeding, especially a criminal trial, where affirmance is very likely because the issues are ones where the district court is reviewed only for clear error or abuse of discretion. In addition, where the appeal occurs during a criminal trial, a mistrial may result if the appeal process is prolonged, raising both speedy trial and double jeopardy concerns. United States v. Horn, 29 F.3d 754, 768 (1st Cir. _____________ ____ 1994). Were every factual dispute or law application issue posed by a privilege claim open to interlocutory review in mid-trial, it could take weeks to secure the necessary transcripts, learn background facts that the trial judge has absorbed over many months, and then replicate and review district court rulings. Admittedly, this collateral order test does create a possibility that disclosure of documents may be ordered based on a mistake of fact or a misapplication of settled law, and the error may escape review. But litigation is full of such instances: a temporary restraining order may cause irreparable harm; burdensome discovery may be compelled before review can be secured; a witness whose claim of privilege is overruled may answer rather than risk contempt. The finality rule reflects a compromise among competing -9- -9- interests. Given the protection afforded by the collateral order doctrine and mandamus, we think that there is little chance of any grave miscarriage of justice. No one can make a seamless web out of all of the decisions on collateral orders. The circuits are not unanimous in every nuance, see 15A Wright, supra, 3911, and ___ _____ even within circuits, a wider scope of review may be available for some interlocutory orders, such as an order denying a claim of immunity or an order imposing sanctions on a non-party for contempt. E.g., Lowinger v. Broderick, 50 ____ ________ _________ F.3d 61, 64 (1st Cir. 1995) (immunity). But we have set forth the collateral order doctrine in this circuit as it applies to discovery orders, and must respect our own precedents.  Turning to the merits, we conclude that the claims made in these attempted appeals do not reveal any clear error of law. The district judge at the outset accurately laid out the rules applicable to the attorney-client privilege and work-product protection, including the pertinent exceptions and waiver. He reviewed the documents virtually line by line, finding some pages or portions to be protected from disclosure and some unprotected. Most of the arguments raised on appeal are patently attacks on factual findings or on the application of legal standards to those facts. To review each ruling would require a time-consuming effort and -10- -10- entail a delay all out of proportion to any likelihood of a reversal.  But American Honda does raise one issue that involves an arguable claim of legal error. In examining the Cameron "legal file," the district judge concluded that, as to certain portions of the materials protected by attorney- client privilege, American Honda had waived the privilege. American Honda says that the district judge misunderstood the legal standard for an implied waiver of the privilege. Specifically, the district court found that  American Honda has disclosed to the United States government considerable portions of the information acquired through internal investigation into the conduct comprising the charges against the defendants in this case. . . . In light of American Honda's disclosure of information acquired through internal investigation, the court finds that American Honda has waived the attorney-client privilege with respect to documents containing information acquired through internal investigation. The court then listed the portions of the materials as to which American Honda had waived the privilege. American Honda now contends that waiver results only when the client reveals privileged communications to a third party, not when the client reveals "the information" contained in privileged communications. American Honda argues that the district court clearly erred by finding a waiver from the company's disclosure to the government of facts, not of privileged _____ -11- -11- communications. E.g., Upjohn Co. v. United States, 449 U.S. ______________ ____ __________ _____________ 383, 395 (1980). The district judge may have meant that privileged communications were disclosed to the government and therefore ______________ privilege as to those topics was waived. On the other hand, the judge twice referred to American Honda's disclosure of "information," and did not indicate that any specific privileged documents had been disclosed. So the judge may have found waiver because the substance of the communications had already been revealed to the government by American Honda. If the court's ruling embraced this latter theory, we agree that a legal issue is raised, but do not agree that such a theory constitutes legal error.2 To put the matter in context, we note that the documents as to which waiver was found appear to be pages or portions of pages setting forth information gathered by Lyon & Lyon at the behest of American Honda from sources whose identity is not revealed. The information consists importantly of allegations or evidence as to payments made by Honda dealers to Honda employees. The documents, prepared by Lyon & Lyon, Cameron or others, reflect the communication of these  ____________________ 2In noting the ambiguity, we intend no criticism. The district judge's careful analysis, detailed order and document-by-document review--undertaken in the middle of a complex trial--were altogether admirable. -12- -12- allegations or evidence to Cameron or other executives of American Honda. It is fair to read the district court's order as a finding that the same allegations or evidence were thereafter disclosed by American Honda to government investigators. The district court does not describe means of disclosure; appellants' briefs shed no light upon the matter, but also do not contest the finding that such a disclosure occurred. We thus take the case as one in which American Honda received factual information from its counsel, disclosed those facts to the government, and now seeks to withhold the documents that reflect the original communication of that information to American Honda. One might ask why there is any basis for a claim of privilege in the first instance, since the privilege is primarily designed to protect communications by the client to _____________ the lawyer in order to procure legal advise. See VIII J. ___ Wigmore, Evidence 2320, at 628-29 (J. McNaughton, ed. ________ 1961). Possibly some of the information was provided to the law firm by American Honda employees. Or the district court may have deemed the material privileged (aside from waiver) because the lawyer's communications to the client are secondarily protected as needed to prevent inferring what the client said to the lawyer. Id. ___ -13- -13- In all events, the question here is the effect of American Honda's disclosure of this information to the government. Wigmore tells us that "[j]udicial decision gives no clear answer to th[e] question" of what constitutes "a waiver by implication," and that only a few general instances are well settled. Wigmore, supra 2327, at 635. For _____ example, a client's offer of his own testimony as to specific _________ facts does not waive the privilege as to his communications with his attorney on the same subject, id. 2327, at 638; ___ but this rule protects testimony given by the client in __ court, in order that the right to testify should not come at _____ the price of one's ability to consult privately with counsel. Id. 2327, at 637. Admitting that "authority is scanty," ___ McCormick cites a number of cases in which disclosures by the client, other than those involving in-court testimony, have been held to be a waiver. I McCormick on Evidence 93, at _____________________ 377-48 (J. Strong ed., 4th ed. 1992). Appellants respond that the privilege protects "communications, not facts," Upjohn, 449 U.S. at 395, so that ______ American Honda cannot have waived the privilege as to the notes or memoranda merely by revealing to the government the allegations or evidence recorded in the notes or memoranda. The distinction is useful in some circumstances--say, where a party tries to refuse to testify about an automobile accident on the ground that he gave his counsel a private description -14- -14- of the same accident. But, once again, the distinction appears to have little to do with the present problem. Here, the gist of the matter is that counsel informed the client of detailed evidence and allegations concerning possible bribes of its employees, and the client chose to make this same information available to the government. What is sought by the defense in the criminal trial is merely the recordations by or for the client of this same information. The information now having been disclosed by the client to the government, it is unclear what damage to the attorney- client privilege can occur from making the corresponding portions of the file available. the district court carefully limited the disclosures to the factual allegations, excluding any commentary on their legal implications. Indeed, American Honda's disclosure to the government of the factual information received from its law firm not only reveals that information, and American Honda's knowledge of it, but makes an inquiry into the source and basis for the information hard to avoid. A risk of unfairness is evident where information is provided to one side in a case (here, the United States) and then an inquiry into its origin is shielded by a claim of privilege. In a variety of contexts, the affirmative use of privileged information has been held to be a waiver of privilege. See P. Rice, Attorney-Client ___ _______________ -15- -15- Privilege in the United States 9.34, at 711, 938, 9.40  ______________________________ 950, at 752-53 (1993) (collecting cases). Given the disclosure to the government, the waiver label is presumptively apt. Waiver doctrine has only a few hard- edged rules; as to many permutations, it is a fluid body of precedent reflecting a variety of concerns, including an insistence on real confidentiality and limitations based on fairness. See "Developments in the Law--Privileged ___ Communications," 98 Harv. L. Rev. 1450, 1629-32 (1985). In ______________ this instance, confidentiality has largely been dissolved by American Honda's own actions. One argument not made by appellants is that, as a matter ___ of policy, private revelations to the government of possible criminal conduct ought not waive the privilege as to third parties. The concern, of course, is to encourage such revelations. The general tendency of the law is to treat waivers as an all-or-nothing proposition, e.g., ALI Model ____ _________ Code of Evidence, Rule 231, comment (a) (1942); but there is _________________ a trace of support for limited waivers in some cases involving confidential disclosures to the government. Diversified Industries, Inc. v. Meredith, 572 F.2d 606 (8th _____________________________ ________ Cir. 1977). See generally Rice, supra, 9.86-9.87 (collecting _____________ ____ _____ and analyzing the cases). On the other hand, it is a serious matter to withhold from a defendant in a criminal case details that have already -16- -16- been made available to the government by a person claiming the privilege. If there were ever an argument for limited waiver, it might well depend importantly on just what had been disclosed to the government and on what understandings. Without intending to preclude such an argument in a future case, we think that it is enough in this one to say that no such claim of limited waiver has been argued to us. This discussion also disposes of the alternative request for mandamus. Mandamus is a discretionary writ available in extraordinary circumstances to redress grievous error. Garcia, 876 F.2d at 260. While it is not restricted to ______ errors of law, it does require that the error be manifest and the burden of showing manifest error is upon the applicant for the writ. No such legal error has been shown and, as to the district court's fact-findings and applications of settled rules to particular facts, it is enough to say that we have found no manifest error. Judgment has been previously entered. We direct that this opinion be filed and transmitted to the district court and the parties to the appeal. Each side shall bear its own costs. It is so ordered. ________________ -17- -17-