**UNITED STATES of America**

v.

**MASSACHUSETTS INSTITUTE OF TECHNOLOGY.**

Civil Action No. 96–10412–MBD.

United States District Court, D. Massachusetts.

Jan. 10, 1997.

---

*MEMORANDUM AND ORDER*

O'TOOLE, District Judge.

By this petition, the United States seeks to enforce an Internal Revenue Service ("IRS") summons and compel the defendant Massachusetts Institute of Technology ("MIT") to produce copies of various corporate records, including committee minutes and legal bills, for its 1991 fiscal year. MIT contends that the material sought in the IRS summons is protected by the attorney-client privilege, the work product doctrine, or both. This Court concludes that the work product doctrine does not apply and that MIT has waived the attorney-client privilege with respect to most of the withheld documents by having voluntarily disclosed them previously to the Defense Contract Audit Agency ("DCAA").

### I. Background

As a tax-exempt organization, MIT is required to submit informational returns to the IRS. In May 1993, the IRS sent an "Information Document Request" to MIT, seeking the meeting minutes of the MIT Corporation and its Executive and Auditing Committees for fiscal year 1991, as well as bills for legal services provided by certain law firms that represented MIT during that time period. MIT submitted the requested documents, but redacted portions it claimed were protected from disclosure by either the attorney-client privilege or the work product doctrine.

1. In its petition, the United States says that the "same information which the respondent. MIT is now withholding and asserting to be privileged was previously disclosed by [MIT] in the course of another governmental audit to the [DCAA]." Petition ¶ 10. MIT's response "admits that it provided unredacted copies of certain of the documents sought in the summons to the [DCAA]." Response ¶ 10. In its brief, MIT acknowledges that it "provides voluminous information, including information concerning its costs for legal services, to the DCAA in connection with the DCAA's oversight role in examining MIT's cost submissions seeking reimbursement under federal contracts and grants to MIT." Memorandum at 7.

Since it believed that MIT had previously provided complete copies of the information sought to the DCAA (the auditing arm of the Department of Defense) during a DCAA audit for fiscal year 1991, the IRS attempted to obtain the information directly from the DCAA. The DCAA acknowledged that it had such documents but refused to turn them over to the IRS, however, taking the position that it had "a responsibility to protect the contractor's information from unauthorized disclosure outside [the] D[epartment] o[f] D[efense]." Affidavit of John Sears ("Sears Affidavit") ¶ 14.[1]

On December 19, 1994, the IRS issued a summons for the withheld documents. The summons seeks copies of the minutes of meetings of the MIT Corporation and the Executive and Auditing Committees between March 1, 1990 and December 6, 1991, as well as unredacted invoices for legal expenses rendered to MIT by various law firms between July 1, 1990 and June 30, 1991. MIT produced some of the requested materials in response to the summons, but again redacted certain portions it claimed were protected from disclosure.

The parties negotiated in an attempt to find an acceptable compromise, but they were unable to agree. The United States filed this petition to enforce the IRS summons, pursuant to 26 U.S.C. §§ 7402(b), 7604(a).

### II. Discussion

#### 1. Overview of the Privileges

■ Though the attorney-client privilege and the work product doctrine are often

It appears that MIT does not agree to the broad allegation in the petition that *all* the documents sought by the summons had previously been provided to the DCAA, although it seems clear that a great volume of them were. The Court infers from the parties' exchanges that all the legal bills were provided to the DCAA. What *does not appear is whether the meeting minutes* were also provided. The question has significance only with respect to the issue of MIT's waiver of the attorney-client privilege. Since the burden of establishing such a waiver would fall upon the United States, in the absence of sufficient evidence on the point the Court resolves the matter against the government, and accordingly assumes that the minutes were not provided to the DCAA.

claimed by parties in the same breath, they are distinctly different matters. The attorney-client privilege applies only to confidential communications between a client and an attorney for the purpose of obtaining legal services or advice. *Fisher v. United States*, 425 U.S. 391, 403, 96 S.Ct. 1569, 1577, 48 L.Ed.2d 39 (1976); *United States v. Dyer*, 821 F.2d 35, 38 (1st Cir.1987). The purpose of the privilege is to encourage "full and frank communication between attorneys and their clients." *Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S.Ct. 677, 682, 66 L.Ed.2d 584 (1981). Even where the privilege applies however, the communication may be discoverable if the privilege has been waived. *See generally*, 26A Charles A. Wright & Kenneth W. Graham, Jr., *Federal Practice and Procedure: Evidence § 5727* (1980).

■ The focus of the work product doctrine is different. It protects from discovery materials that contain or indicate the cognitive processes of an attorney. In *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), the Supreme Court recognized the important public policy reasons for protecting attorneys' work product.

> Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten. An attorney's thoughts, heretofore inviolate, would not be his own. Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial. The effect on the legal profession would be demoralizing. And the interests of the clients and the cause of justice would be poorly served.

*Id.* at 511, 67 S.Ct. at 393–94. However, as with the attorney-client privilege, the protection given to such work product is not absolute. A party seeking disclosure can obtain the work product of an adversary's attorney if he or she can "establish adequate reasons to justify production through a subpoena or court order." *Id.* at 512, 67 S.Ct. at 394.

The work product doctrine articulated in *Hickman* has been substantially codified in Rule 26(b)(3) of the Federal Rules of Civil Procedure:

> [A] party may obtain discovery of documents and tangible things ... prepared in anticipation of litigation or for trial or for another party or by or for that other party's representative ... only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means.

Fed.R.Civ.P. 26(b)(3).

Finally, in analyzing MIT's claims of privilege, the Court is guided by the general principle that privileges, because they obstruct the truth-finding process, must be strictly construed. *University of Pa. v. E.E.O.C.*, 493 U.S. 182, 189, 110 S.Ct. 577, 582, 107 L.Ed.2d 571 (1990); *Trammel v. United States*, 445 U.S. 40, 50, 100 S.Ct. 906, 912, 63 L.Ed.2d 186 (1980). *See also Fisher*, 425 U.S. at 403, 96 S.Ct. at 1577.

### 2. Attorney-Client Privilege

■ MIT contends that the law firm billing statements are protected because they reveal MIT's "motive ... in seeking representation, litigation strategy, or the specific nature of the services provided, such as researching particular areas of law." *Clarke v. American Commerce Nat'l Bank*, 974 F.2d 127, 129 (9th Cir.1992). Whether the requested billing statements are actually covered by the privilege need not be determined because, assuming that they are, it appears that MIT has waived the privilege by voluntarily disclosing them to the DCAA.

MIT acknowledges that the documents at issue were previously submitted unredacted to the DCAA. In contending that it has not waived its right to assert a claim of privilege, MIT relies upon the "selective waiver" theory outlined in *Diversified Indus., Inc. v. Meredith*, 572 F.2d 596 (8th Cir.1977) (en banc). Under this theory, a client who has disclosed privileged communications to one person may, in certain circumstances, continue to assert the privilege against other persons. *Id.* at 611; *see also Developments in the Law, Privileged Communications*, 98 Harv. L.Rev. 1450, 1630–31 (1985).

In *Diversified,* the Eighth Circuit held that the disclosure of protected materials to the Securities and Exchange Commission during the course of a formal investigation constituted only a selective waiver of the privilege, and, consequently, the materials were not subject to discovery in subsequent civil litigation. *Diversified,* 572 F.2d at 611. In explaining its departure from traditional waiver doctrine, the *Diversified* court noted that a contrary holding would discourage cooperation with government investigations. *Id.*[2]

The First Circuit has not squarely addressed this issue. In *United States v. Billmyer,* 57 F.3d 31 (1st Cir.1995), the Court held that the attorney-client privilege had been waived where the client had disclosed to the government the substance of the privileged communications. "The information now having been disclosed by the client to the government, it is unclear what damage to the attorney-client privilege can occur from making the corresponding portions of the file available [to the defendants]." *Id.* at 37. The court noted that the "general tendency of the law is to treat waivers as an all-or-nothing proposition ... but there is a trace of support for limited waivers in some cases involving confidential disclosures to the government." *Id.* (citing *Diversified,* 572 F.2d at 606).

The Third Circuit and the D.C. Circuit have clearly rejected the selective waiver theory. *See Westinghouse Elec. Corp. v. Republic of the Philippines,* 951 F.2d 1414, 1424–25 (3d Cir.1991); *In re Subpoenas Duces Tecum,* 738 F.2d 1367, 1370 (D.C.Cir. 1984); *Permian Corp. v. United States,* 665 F.2d 1214, 1221–22 (D.C.Cir.1981). These cases have held that the disclosure of privileged information to any third party destroys the privilege.

This Court follows the apparent inclination of the First Circuit and agrees with those other circuits that have declined to approve a selective waiver of the privilege. Permitting selective waiver does not advance the privilege's main purpose, which is to protect the confidentiality of attorney-client communications in order to encourage clients to obtain informed legal assistance. *See Westinghouse,* 951 F.2d at 1424; *Permian,* 665 F.2d at 1220. Thus, voluntary disclosure to a third party of purportedly privileged communications has been typically regarded as inconsistent with a later assertion of the privilege. "The privacy for the sake of which the privilege was created [is] gone by the [client's] own consent, and the privilege does not remain under such circumstances for the mere sake of giving the client an additional weapon to use or not at his choice." *Green v. Crapo,* 181 Mass. 55, 62 N.E. 956 (1902) (Holmes, C.J.). The D.C. Circuit has similarly observed that

> [t]he client cannot be permitted to pick and choose among his opponents, waiving the privilege for some and resurrecting the claim of confidentiality to obstruct others, or to invoke the privilege as to communications whose confidentiality he has already compromised for his own benefit.

*Permian,* 665 F.2d at 1221.[3]

In this case, MIT's disclosures to the DCAA were not made to enable it to obtain informed legal advice but rather to comply with regulations imposed on Defense Department contractors. In effect, MIT seeks warrant to pick and choose which government agency to share its confidential information with. "The attorney-client privilege is not designed for such tactical employment." *Permian,* 665 F.2d at 1221. MIT waived the attorney-client privilege with respect to the legal bills by submitting them to the DCAA.

■ The application of the privilege to the meeting minutes requires individual assess-

---

**2.** There is irony in MIT's invocation of a policy explicitly designed to promote cooperation with government investigations in aid of its attempt to prevent the disclosure of information to a government agency.

**3.** This is not to say that disclosures must *always* waive the privilege. Some disclosures are not inconsistent with the policy underlying the privi-

lege, such as disclosures to co-defendants, co-litigants, and "agents" who assist the attorney in giving legal advice. The disclosures in these cases, however, are "consistent with the goal underlying the privilege because each type of disclosure is sometimes necessary for the client to obtain informed legal advice." *Westinghouse,* 951 F.2d at 1424.

ment. MIT delivered copies of the portions of the minutes claimed to be protected by the privilege to the Court for *in camera* inspection.

After review, the Court concludes that the following claims are not within the scope of the privilege because they do not appear to be confidential communications between MIT and its legal counsel, but rather simply reports on pending legal issues:

  a. Minutes of the Corporation Meeting, October 5, 1990;
  b. Minutes of the Corporation Meeting, December 6, 1991;
  c. Minutes of the Executive Committee, February 1, 1991.

Other documents would fall within the privilege only insofar as they relate to the cost of legal services. It is doubtful that the amount paid for legal services alone is a privileged matter, *see In re Grand Jury Witness,* 695 F.2d 359, 361 (9th Cir.1982), but in any event, by producing its legal bills to the DCAA, MIT waived the privilege if it attached. Accordingly, the following documents withheld must also be produced unredacted in response to the summons:

  d. Minutes of the Audit Committee, March 1, 1990;
  e. Minutes of the Audit Committee October 4, 1990;
  f. Minutes of the Audit Committee, October 3, 1991.

█ On the other hand, the Court concludes after review that the matter redacted in the following minutes properly falls within the scope of the privilege because it represents or repeats confidential communications between MIT officials and counsel, and the redacted matter need not be produced:

  g. Minutes of the Executive Committee, June 2, 1991;
  h. Minutes of the Executive Committee, September 6, 1991;
  i. Minutes of the Audit Committee, February 28, 1991.

### 3. Work Product Doctrine

█ MIT contends that the information sought by the IRS also is protected by the work product doctrine. The threshold question in addressing this claim is whether the materials at issue are properly "work product" within the meaning of the doctrine. To be work product, the materials must be (1) documents and tangible things (2) prepared in anticipation of litigation or for trial (3) by the party or the party's representative. Fed. R.Civ.P. 26(b)(3).

The committee minutes and legal invoices are clearly documents, and they were prepared either by MIT or its attorneys. The dispute focuses on whether the materials were "prepared in anticipation of litigation or for trial." Fed.R.Civ.P. 26(b)(3). "Materials assembled in the ordinary course of business ... or for other nonlitigation purposes are not under the qualified immunity provided by this subdivision." Fed.R.Civ.P. 26(b)(3) advisory committee's note.

Neither the committee minutes nor the legal invoices qualify as protectable work product. The minutes requested are of regular meetings held by the MIT Corporation and two committees. Similarly, the legal invoices appear to be billing records which MIT's attorneys regularly prepare and send to all their clients. Though the invoices may give some indication of the attorneys' cognitive processes to the extent that they reveal the legal topics researched, they cannot qualify for work product doctrine protection because they were prepared by MIT's attorneys in the ordinary course of business, and not in anticipation of litigation.

The reported cases support a strict interpretation of the "prepared in anticipation of litigation" requirement. The prospect of litigation must be more than an "ever-present possibility." *National Union Fire Ins. Co. v. Murray Sheet Metal Co.,* 967 F.2d 980, 984 (4th Cir.1992). "The document must be prepared because of the prospect of litigation when the preparer faces an actual claim or a potential claim following an actual event or series of events that reasonably could result in litigation." *Id.* See also *Martin v. Bally's Park Place Hotel & Casino,* 983 F.2d 1252, 1260 (3d Cir.1993) (party can claim work product protection if party's belief that litigation will result is "objectively reasonable").

306

MIT cites several cases in which courts have protected attorneys' billing records from disclosure. *See In re Horn,* 976 F.2d 1314 (9th Cir.1992); *Clarke,* 974 F.2d at 129; *In re Grand Jury Witness,* 695 F.2d 359, 361 (9th Cir.1982); *Riddell Sports, Inc. v. Brooks,* 158 F.R.D. 555, 560 (S.D.N.Y.1994); *Real v. Continental Group, Inc.,* 116 F.R.D. 211, 214 (N.D.Cal.1986). These cases, however, offer protection to billing records under the attorney-client privilege, which, as noted earlier, is very different in scope and purpose from the work product doctrine discussed here. No cases are cited that support MIT's contention that the committee meeting minutes are protected on work product grounds, and this Court has not found any. Given the routine nature of the requested materials, the Court concludes that the requested materials are not protected by the work product doctrine.

### *ORDER*

For the foregoing reasons, except for the minutes of the Executive Committee meetings of June 2, 1991, and September 6, 1991, and the minutes of the Audit Committee meeting of February 28, 1991, the petition is GRANTED, and MIT is directed to comply with the summons.

IT IS SO ORDERED.